STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark A. PETERSON, Defendant-Appellant.†

Court of Appeals

*No. 97–3294–CR. Submitted on briefs May 22, 1998.—Decided June 9, 1998.*

(Also reported in 584 N.W.2d 144.)

†Petition to review denied.

474

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Margaret A. Maroney*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J. Mark Peterson appeals a judgment of conviction for intentionally causing bodily harm to a child, contrary to § 948.03(2)(b) and (5), STATS., and an order denying postconviction relief. Peterson contends that the trial court erred by failing to properly instruct the jury on the privilege to discipline, by re-instructing the jury in a manner favoring the prosecution, and by answering jury questions without a valid waiver of his right to be present. We conclude that the erroneous jury instruction was harmless, the re-instruction was proper, and any error arising from the failure to obtain Peterson's waiver before answering jury questions was harmless. Accordingly, the judgment and order are affirmed.

The facts essential to this appeal are undisputed. Peterson gave his four-year-old step-daughter a spanking after his wife, the child's mother, asked him to do so. According to the Petersons' trial testimony, the child had been failing to follow directions for some time and was not responding to other forms of discipline. Peterson placed the child over his knees, and with his open hand spanked her between four and six times through her clothing.

The next day, the director of the Head Start program the child attended noticed bruising in the area of the child's buttocks and reported the incident to social services. A social worker and police officer arrived to investigate, and observed what the officer described as "severe and significant bruising." The officer also observed hand imprints in the area. As a result of these observations and an initial discussion with Peterson, who had arrived to pick up his step-child, the girl was taken into temporary custody by Outagamie County Social Services. The next day the girl was taken to a doctor who concluded after an examination that "a

pretty severe spanking would have to be done to cause [the] bruises." Peterson was ultimately arrested.

Peterson defended his actions by asserting the privilege to discipline a child whose welfare was his responsibility. *See* § 939.45(5), STATS. (a person responsible for a child's welfare is privileged to use reasonable discipline). At the conclusion of the trial, the trial court instructed the jury under WIS J I—CRIMINAL 2109 that there were three elements to the crime: first, that Peterson caused bodily harm to his step-daughter; second, that he intentionally caused such harm; and third, that the child had not attained the age of eighteen years at the time of the offense. The court also instructed the jury on the discipline privilege as follows:

> Discipline of a child is an issue in this case. The State must prove by evidence which satisfies you beyond a reasonable doubt that the defendant was not acting lawfully in the discipline of a child. The law allows a person responsible for the child's welfare to use reasonable force to discipline that child. Reasonable force is that force which a reasonable person would believe is necessary. Whether a reasonable person would have believed that the amount of force used was necessary and not[1] *intentional* must be determined from the standpoint of the defendant at the time of his acts. The standard is what an ordinary and prudent and reasonably intelligent person would have believed in the position of the defendant acting under the circumstances that existed at the time of the alleged offense. In determining whether the discipline was or was not reasonable, you should consider the age,

---

[1] The word "not" was mistakenly transcribed as "note" during the preparation of the transcript.

> the sex, and physical and mental condition, and disposition of the child, the conduct of the child, the nature of the discipline, and all the surrounding circumstances. It is never reasonable discipline to use force which is intended to cause great bodily harm or death or which creates an unreasonable risk of great bodily harm or death.
>
> If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant did not act reasonably in the discipline of [his step-daughter], you should find the defendant guilty. (Emphasis added.)

This instruction differed from the model instruction in that the trial court mistakenly replaced the word "excessive" with "intentional" as emphasized above. *Compare* WIS J I—CRIMINAL 950.

At the time, it appears that the court's misstatement was not recognized. The court apparently was unaware of its mistake because it did not correct it. Furthermore, Peterson's counsel apparently was unaware of the mistake because at a hearing held almost immediately afterward he stated that he and his client had "no objection to the instructions not only as proposed, but those given and those read." Finally, it can be assumed that the State was unaware of the mistake because it, too, failed to bring the matter to the court's attention.

After the instructions were read in full, the court gave the instructions in written form to the jury. The written instructions correctly stated "excessive" instead of "intentional."

After they had begun deliberating, the jury submitted two questions to the court. First, the jury asked, "Your Honor, we agree on the first and third elements. Can you define 'intent to cause bodily harm?' " Second,

the jury asked, "Can you define spanking in the state of Wisconsin?" The court held a conference in chambers with Peterson's attorney participating by telephone; Peterson himself was not present. After listening to arguments, the court responded to the jury as follows: "Please refer to instruction 2109 for intent. We know of no legal definition of the word 'spanking' in Wisconsin. Please refer to your common knowledge and the instructions given." Peterson was ultimately convicted and brought various postconviction motions, which were denied.

Peterson's first claim on appeal is that the trial court erred by failing to properly instruct the jury on the discipline privilege. Section 939.45(5)(b), STATS., allows a person to reasonably discipline a child whose welfare is his or her responsibility. Peterson claims that he was denied the full use of this privilege by the trial court's erroneous substitution of the word "intentional" for "excessive."

██

We agree that the trial court's misstatement amounted to error in its verbal privilege instruction. When the court gives an erroneous instruction, however, a new trial is not warranted unless the error is prejudicial. *Nowatske v. Osterloh*, 198 Wis. 2d 419, 428–29, 543 N.W.2d 265, 268 (1996).

Although Peterson refers to *Nowatske* as summarizing the applicable law and actually addresses the issue of whether the error was prejudicial, he at one point in his brief calls into question the applicability of a harmless error analysis to this case.[2] In support of

---

[2] It is not clear from Peterson's brief whether this actually is a distinct argument, or whether it was part of an earlier, abandoned appellate theory that was not removed in the final draft. In his brief, Peterson begins by identifying *Nowatske v. Oster-*

his apparent contention that the harmless error analysis does not apply, Peterson cites to *Sullivan v. Louisiana*, 508 U.S. 276 (1993). In *Sullivan*, the Court reversed a conviction that was based on a definition of "reasonable doubt" essentially identical to one previously held unconstitutional. *Id.* at 277. Beginning with the principle that harmless error tries to answer the question "whether the guilty verdict rendered in *this* trial was surely unattributable to the error," the Court concluded that it was illogical to apply harmless error. *Id.* at 279–80 (emphasis in original). This was because there had been no proper guilty verdict. "[T]o hypothesize a guilty verdict that was never in fact rendered . . . would violate the jury-trial guarantee" by replacing a trial by jury with a trial by judge. *Id.* at 279–81.

We do not believe that *Sullivan* intended to overrule all state court decisions applying the "harmless error" analysis to erroneous jury instructions. Rather, we interpret *Sullivan's* holding simply to be that harmless error analysis cannot apply where the burden of proof instruction is unconstitutional. *See Johnson v.*

---

*loh*, 198 Wis. 2d 419, 543 N.W.2d 265 (1996), as giving the proper summary of the law, and he directly quotes the part of the case requiring prejudice before a new trial is warranted. Peterson next discusses the applicability of each of four ways identified in *Nowatske* that instructions may be erroneous. It is while discussing the third of these that Peterson argues that a misdescription of the burden of proof vitiated the verdict, rendering it "not subject to the harmless error test." However, after applying the fourth example of instructional error, Peterson confusingly goes on to say, "Finally, this court *must* determine whether the error was prejudicial." (Emphasis added.) That this argument is not explicitly described as an alternate reason makes Peterson's theory unclear. Nevertheless, we will assume that Peterson is making alternative arguments and address both issues.

*United States*, 520 U.S. 461, 117 S.Ct. 1544, 1549 (1997) (distinguishing *Sullivan* from instances where the jury is improperly instructed on an element of the offense, "an error which is subject to harmless-error analysis"). Here, there is no allegation that the instructional error had anything to do with the burden of proof. We therefore reject Peterson's apparent claim and apply the harmless error analysis as set forth in *Nowatske*.

■

An instructional error "is not prejudicial if it appears that the result would not be different had the error not occurred." *Nowatske*, 198 Wis. 2d at 429, 543 N.W.2d at 268 (internal source omitted). "The test to be applied in determining whether such an error is prejudicial is the probability and not merely the possibility that the jury was misled thereby." *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 378, 360 N.W.2d 2, 20 (1984). We conclude that the error was not prejudicial.

In asking this court to find prejudice, Peterson contends that *State v. Lohmeier*, 196 Wis. 2d 432, 538 N.W.2d 821 (Ct. App. 1995), *overruled by State v. Lohmeier*, 205 Wis. 2d 182, 556 N.W.2d 90 (1996), is instructive because there, as is alleged here, the jury instructions contained inconsistencies that effectively denied the defendant his defense. We believe that *Lohmeier* is readily distinguishable. Lohmeier was charged, in part, with several counts of violating § 940.09, STATS. (homicide by intoxicated use of a vehicle). *Lohmeier*, 196 Wis. 2d at 436, 438 N.W.2d at 822. As his defense, Lohmeier contended that the accident would have occurred even if he had been exercising due care in operating his vehicle. *Id*. at 437, 438 N.W.2d at

822. If the jury believed this defense, Lohmeier would have been acquitted. *Id*. at 440, 438 N.W.2d at 823.

The trial court in *Lohmeier* initially instructed the jury that it was a defense to the crime if the jury was "satisfied to a reasonable certainty by a greater weight of the credible evidence that the death would have occurred even if the defendant would have been exercising due care and had not been under the influence." *Id*. at 442–43, 438 N.W.2d at 824–25. The trial court, however, also gave what the court of appeals called a "seemingly inconsistent instruction" that "You are further instructed . . . that it is no defense to a prosecution for a crime that the victim may have been contributorily negligent." *Id*. at 443, 438 N.W.2d at 825. Under these circumstances, the court of appeals held that the instructions effectively denied Lohmeier his defense by essentially telling the jury that the victim's actions could not be considered. *Id*.

■

The supreme court reversed, concluding that the instructions given, while possibly misleading, were not erroneous. *Id*. at 192, 556 N.W.2d at 93. As a result, it concluded that the proper test to be applied was not harmless error, but rather whether there was a "reasonable likelihood that the jury was misled and therefore applied [the] potentially confusing instructions in an unconstitutional manner." *Id*. at 194, 556 N.W.2d at 93–94. However, because in our case the oral instruction was erroneous, we apply the standard of review of whether the error was prejudicial. *See Nowatske*, 198 Wis. 2d at 429, 543 N.W.2d at 268.

Peterson contends that the error was prejudicial because, as the court of appeals concluded in *Lohmeier*, the instructions deprived him of his defense. Peterson argues that his jury was essentially told that it should

not consider his defense because it was not available to a defendant who acts intentionally. Upon thorough review of the record, we disagree that this incorrect message was conveyed to the jury. Throughout the trial the issue was continually and correctly identified to be whether Peterson used *excessive* force in disciplining his step-daughter. The record is replete with examples. During opening statements, the State argued that "the issue is reasonable discipline" and that the "real crux" of the case was "whether or not appropriate parental discipline was used, or whether or not Mr. Peterson went over that line and abused his child." At the end of its statement, the State also said that it was going to prove that Peterson's conduct "was totally out of bounds with respect to parental discipline and constituted child abuse." Peterson's counsel also mentioned during opening statements that the focus of the case was whether the discipline that Peterson used "was reasonable under the circumstances prevailing at that time" or rather was "excessive discipline."

During the trial the continued focus was whether Peterson's spanking was excessive. Thus, a police officer was called to testify that Peterson's wife told him she believed Peterson spanked the child too hard, that she questioned Peterson about it, and that Peterson ultimately admitted to her that he had gone too far. The child's doctor was asked his opinion about whether the injuries were indicative of child abuse, and he testified that he believed excessive force was applied. Finally, both Peterson and his wife were asked whether they believed the spanking to be reasonable or severe.

The issue of the excessiveness of the spanking was again properly emphasized in closing arguments. The State began by stating that "what the case boils down

to is whether or not Mr. Peterson's discipline of [the child] was reasonable or unreasonable." At least five other times, the State summarized its case as demonstrating that the discipline was "above the reasonable line" or "beyond the norm." The defense counsel likewise described the issue in similar terms.

Finally, the jury was read an instruction on the use of reasonable discipline. The instruction that was actually read correctly stated that "The law allows a person responsible for the child's welfare to use reasonable force to discipline that child. Reasonable force is that force which a reasonable person would believe is necessary." Unfortunately, the instructions improperly stated in the next sentence that "Whether a reasonable person would have believed that the amount of force used was necessary and not intentional must be determined from the standpoint of the defendant at the time of his acts." But again, after this misstatement, the court instructed as follows: "It is never reasonable discipline to use force which is intended to cause great bodily harm or death or which creates an unreasonable risk of great bodily harm or death. If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant did not act reasonably in the discipline of [his step-daughter], you should find the defendant guilty." Furthermore, the jury was given the instruction in written form that contained a proper view of the law.

■

We cannot conclude on this record that the jury was probably misled. This view is bolstered by the fact that nobody appeared to recognize the trial court's misstatement. There was no objection, and Peterson's counsel specifically agreed with the instructions "as

read."[3] We conclude that no prejudice resulted from the instructional error.

Peterson also argues that the instructions were infirm because the different standards in the oral and written instruction likely confused the jury. We disagree. While it is true that "a correct statement in another part of the instruction *sometimes* does not correct but only confuses the jury," the "true rule is whether in a given case prejudice resulted from the error even though corrected." *Savina v. Milwaukee Gas Light Co.*, 36 Wis. 2d 694, 703, 154 N.W.2d 237, 241 (1967) (emphasis added). The single discrepancy between the instructions read and submitted does not alter our conclusion that there was no prejudice.

Peterson's second argument on appeal is that he was denied his right to a fair trial and his right to present a defense when the court reinstructed the jury on the elements of the offense but not on the discipline privilege. We disagree. At the outset, we do not agree with Peterson's statement of the issue. The trial court did not reinstruct the jury on the elements of the offense. Rather, the alleged error resulted from the trial court's answer to a straightforward jury question: "Your Honor, we agree on the first and third elements. Can you define 'intent to cause bodily harm?' " The court heard arguments from counsel and answered the jury's question by referring it to the instruction given that defined the term, WIS J I—CRIMINAL 2109.

Peterson contends that this reinstruction favored the prosecution by failing to draw the jury's attention

---

[3] Because the State does not raise the issue, we do not consider whether this statement constituted a waiver of Peterson's erroneous instruction argument.

to the discipline privilege. While we might agree with this argument if the court was in fact asked to reinstruct the jury on the elements in its entirety, that was not what occurred. Instead, the court was asked a specific question. We fail to see how the court's correct, direct answer to that question constituted error.[4]

Peterson's final argument on appeal is that the trial court erred by responding to the jury's questions without securing either his presence or a waiver. Peterson contends that he has a mandatory right under § 971.04(1), STATS., to be present during supplemental jury instructions. Unless this court concludes that his absence was due to a valid waiver, Peterson argues, the error in failing to obtain either his presence or a waiver requires reversal without resort to the harmless error test.

We conclude that the error complained of is subject to the harmless error test. Peterson's sole support for the contrary view is his assertion that *State v. Koopmans*, 210 Wis. 2d 671, 563 N.W.2d 528 (1997), rejected the harmless error test for all violations of § 971.04, STATS. *Koopmans* involved the statutory right of a defendant to be present at sentencing. The court concluded that this right was mandatory, and that a defendant may not waive his or her right to be present at sentencing by knowingly and voluntarily being absent from the proceeding. *Id.* 210 Wis. 2d at 680–81, 563 N.W.2d 532–33. No argument was made, however, that the trial court's error in treating the defendant's voluntary absence as a waiver was harmless, and the court explicitly did not consider the issue.

---

[4] We note that Peterson does not argue that the trial court erred by failing to re-instruct the jury on the discipline privilege in response to the jury's request for a definition of "spanking."

We need not decide whether the supreme court's silence signified the rejection of the harmless error test. Even if we agreed with Peterson that *Koopmans* rejected the applicability of the harmless error test in that case, we see no need to extend that holding to the facts of this case. There is a significant difference between sentencing proceedings as involved in *Koopmans* and instructional proceedings as involved here. At a sentencing hearing, the defendant has allocution rights that require his or her presence. *See* § 972.14(2), STATS. Instructional proceedings, on the other hand, often involve legal arguments that preclude the defendant from having a meaningful role. Because of this significant difference, we refuse to interpret *Koopmans* as rejecting the harmless error test for all violations of § 971.04, STATS.

 .

We believe that the correct view of the law, as stated in both *State v. McMahon*, 186 Wis. 2d 68, 88, 519 N.W.2d 621, 629 (Ct. App. 1994), and *State v. David J.K*, 190 Wis. 2d 726, 736, 528 N.W.2d 434, 439 (Ct. App. 1994), is that a violation of the defendant's right to be present "does not automatically entitle [the defendant] to a new trial; such error may be found to be harmless beyond a reasonable doubt." In *McMahon*, the court communicated with the jury on five occasions without the defendant's presence or a waiver. *Id.* at 85, 519 N.W.2d at 628. Nevertheless, the court concluded that such error was harmless because the defendant's counsel was present, and because none of the communications suggested anything of such a substantive nature that the defendant's presence could have been of assistance. *Id.* at 86–87, 519 N.W.2d at 629. Similarly, the court in *David J.K.* did not find prejudice in the violation of the defendant's right to be present

where the defendant did not credibly advance any contribution his presence would have had. *Id.* at 738, 528 N.W.2d at 439.

We acknowledge that neither *McMahon* nor *David J.K.* explicitly applied its holding to a statutory violation, but rather discussed only constitutional violations. However, we see no reason to create a distinction in the present context between a statutory violation and a constitutional violation. The only argument Peterson advances is that this result is required by *Koopmans*. As we have noted, we do not agree with this interpretation. Instead, we hold that violations of § 971.04, STATS., like violations of a defendant's constitutional rights to be present, are subject to harmless error analysis.

Section 971.04, STATS., requires the defendant to be present during several enumerated proceedings. Peterson alleges that the court erred by failing to obtain either his presence or waiver before addressing the jury questions. We will assume without deciding that these proceedings do fall under § 971.04.[5] Nevertheless, we conclude that the error arising from the violation of Peterson's statutory right was harmless.

■

Peterson fails to establish any prejudice resulting from the assumed violation of his statutory right. First, his attorney was present and fully participated in the proceedings. *See McMahon,* 186 Wis. 2d at 88, 519 N.W.2d at 629. This helped insure that Peterson's concerns were taken into account. Second, Peterson does not advance on appeal any specific contribution he would have made had he been present. *See David J.K.,* 190 Wis. 2d at 738, 528 N.W.2d at 439. Rather, the fact

---

[5] The State does not provide any arguments to counter this claim.

that the proceedings focused on issues of a legal nature suggests that Peterson would not likely have been of assistance. *See McMahon*, 186 Wis. 2d at 88, 519 N.W.2d at 629. Third, and perhaps most importantly, the trial court's decision as to how to re-instruct was correct. It is therefore highly unlikely that Peterson suffered any prejudice as a result of the trial court's failure to secure his presence or a waiver.

*By the Court.*—Judgment and order affirmed.