STATE of Wisconsin, Plaintiff-Respondent,

v.

Larry D. HARRIS, Defendant-Appellant.

Terrance C. HARRIS and Willie O. Johnson,
Defendants.

Court of Appeals

*No. 98–1091–CR. Submitted on briefs July 6, 1999.—Decided
August 10, 1999.*

(Also reported in 601 N.W.2d 682.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William S. Coleman, Jr.*, assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

FINE, J.   Larry D. Harris appeals from a judgment entered on a jury verdict convicting him of first-degree intentional homicide, as party to a crime, while armed with a dangerous weapon, and attempted first-degree intentional homicide, as party to a crime, while armed with a dangerous weapon. *See* §§ 940.01(1), 939.05, 939.63, & 939.32, STATS. He also appeals from the trial court's order denying his motion for postconviction relief. He claims that the trial court violated his

rights by conducting part of the jury-selection process when both he and his lawyer were not in court. We agree and reverse for a new trial. Harris also claims that the trial court erred in not severing the trial in his case from that of his co-defendant, Terrance C. Harris, his brother.[1] In light of our resolution of the first claim of trial-court error, we do not discuss the severance issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

## I.

Jury selection in this case was to begin the morning of September 23, 1996. Although Harris's brother and lawyers for both defendants were present when the case was called, Harris was not. The trial court announced that there had been a glitch in producing Harris from a prison in Dodge County, and that it did not believe that Harris would arrive in Milwaukee before noon. The trial court said that it was "extremely disappointed" by the delay because there were "50 jurors sitting over in Jury Management," and suggested to the lawyers for Harris and his brother that it informally "weed out" potential jurors who could not sit:

> I guess the one, ah, thing we may be able to do, ah, is for me to go over and talk to the group of potential jurors, and see if I can weed out or excuse any of them who have, in my view, legitimate reasons for not being able to serve on a trial, which will be a sequestered jury in which, um, is likely to take four or five days to finish.

---

[1] Unless otherwise specified, all references in this opinion to "Harris" are to the appellant, Larry D. Harris.

The trial court asked whether either Harris's lawyer or the lawyer for Harris's brother had "any objection to my doing that." Both replied: "No." The trial court recognized, however, that it was venturing into thorny territory: "Obviously, um, I will need to affirm that with Mr. Larry Harris when he gets here, um, that he's been advised of that and doesn't have an objection to it." The trial court excused the lawyers, telling them to "plan on being back here at 11:30." The transcript indicates that immediately thereafter "a recess commenced at 9:34 a.m."

Some time after the 9:34 a.m. recess, the case was called again. Forty potential jurors were present, as were Terrance Harris, his lawyer, and the prosecutor. Although the trial court had indicated that it would "go over" to the "Jury Management" room where the trial's potential jurors were waiting, the jurors were brought to the courtroom. The trial court's interaction with the potential jurors was recorded and transcribed. Harris's lawyer was not present for most of the trial court's colloquy with the forty jurors; Harris was not there for any of the colloquy with any of the jurors that morning—either the first group of forty or a second group of twenty.

Before Harris's lawyer returned to the courtroom later that morning, the trial court first asked the forty potential jurors if any of them had heard or read about the case—it involved a highly publicized drive-by shooting. All but five jurors indicated that they had. The trial court then explained to the venire panel the obligation of every juror to be fair and impartial, informed them that the State had the burden of proof beyond a reasonable doubt, and asked if there were any who believed that they could be not be fair and impartial. Three persons so indicated. The trial court also

835

told the panel that jury service occasionally created scheduling problems for jurors, and asked if anyone wished to be excused because jury service would conflict with their personal or work obligations. A number of persons, including one who had previously indicated that he could not be fair and impartial, indicated that they wished to be excused due to conflicting obligations. The trial court then read to the venire panel a list of potential witnesses. Six persons, including two who had previously indicated that they could not be fair and impartial, indicated that they knew one or more of the potential witnesses. One of the six, a Milwaukee police officer who had worked on the case, told the trial court in front of the venire panel: "I think at one point we may have gone to look for some of the people involved."

After its colloquy with the panel of forty, the trial court released for lunch nineteen persons who had not indicated that there was an impediment to their sitting as jurors, and told them to return to the trial court's jury room at 11:30 a.m. The trial court then questioned the twenty-one remaining panel members, asking why they believed that they could not be fair jurors or why they believed that their work or personal obligations would prevent them from serving. In response to one of the trial court's questions to him, the Milwaukee police officer again said that he had "done some work on" the case. The trial court also had the following colloquy in front of the other panel members with another potential juror:

> THE COURT: . . . You didn't indicate you had a problem with jury service, but you did indicate some concern about being a fair and impartial juror?
>
> [THE JUROR]: Right. I believe they are guilty already and I believe.

THE COURT: Is that based on because of what you read in the paper?

[THE JUROR]: What I have read and seen on television. Yes.

After more colloquy with that juror, the trial court took a brief recess, excused five potential jurors, including the police officer, and asked the remaining jurors, including the woman who said that she believed that the defendants were "guilty already," to also return to its courtroom at 11:30 a.m. The trial court then welcomed a group of twenty potential jurors and repeated the process.

As later recounted by the trial court without contradiction when both defendants, their lawyers, and the prosecutor were in court, Harris's lawyer was present during the morning session "for at least a portion of the first group" of jurors and "all of the second group." Harris was not present for either group. Harris's lawyer testified at the postconviction hearing that he "was present near the end of the Court's questioning" of the first group, but that "about 99 percent of it had been completed."

After *voir dire* of the potential jurors by the trial court and the lawyers, during which both defendants and their counsel were present, the trial court asked Harris's lawyer to discuss with Harris what happened in their absence and see if Harris objected. The lawyer did and, in a one word response to a comment by Terrance Harris's lawyer, Harris indicated that he did not object.[2] The trial court did not personally ask Harris

[2] Harris's acquiescence was in the following context. Harris's lawyer explained to the trial court that he had told Harris that the trial court had done a "pre screening," which "was of a nature where it's not people that had bad experiences or are intimately related to police or in fact, are officers themselves. It

837

any questions—it did not probe either Harris's understanding of his right to be present with his lawyer during jury selection or the voluntariness of the purported waiver. Four of the first group of forty were selected as deliberating jurors; one served as the jury's forelady.

---

was more in the nature of sole businessmen, people who have commitments, unshakable; the kind of things that develop during a voir dire. But that could be handled while he was in route and told him as much as I might have wanted to have some of the people, I also wanted to have a jury that didn't think, if they were a one man shop, their business was going to go down the tubes. Therefore they would rush. In the same way, someone with a child, they wouldn't be separated from for a time to feel rushed. Mr. Harris agreed that any actions, I gave him a few examples of what went on this morning, were appropriate and he agrees with them." (Court reporter's paragraph break ignored.)

The trial court, the lawyer for Harris's brother, and Harris then had the following exchange:

> THE COURT: I would just reaffirm, of the 60 potential jurors we saw this morning, I released 9 and only for reasons related to their ability to serve on a sequestered 4 or 5 day jury. They were not released for any reasons along the lines of what we just talked about of people being able to be fair or impartial. They had situations; one had a husband going in for medical tests on Wednesday that had a heart condition she would be concerned about that couldn't serve on a jury that long. That is one that comes to mind.
>
> So, all right and I don't think there is really, of the 9, 4 were from the second group which we have hardly gotten into. So, I don't really see any prejudice to Mr. Larry Harris in any event, even though he wasn't here. Anything else we need to do?
>
> [Lawyer for Harris's brother]: And Mr. Harris agrees with the procedure. Is that a yes?
>
> MR. LARRY HARRIS: Yes.

## II.

■

As the State concedes, § 971.04(1)(c), STATS., 1995–96, declared that a defendant in a criminal case has the right to be present "[a]t all proceedings when the jury is being selected," and under *State v. Koopmans*, 210 Wis. 2d 670, 679, 563 N.W.2d 528, 532 (1997) (right to be present at sentencing under § 971.04(1)(g), STATS.), that right to be present may not be waived.[3] We agree. *See State v. David J.K.*, 190 Wis. 2d 726, 736, 528 N.W.2d 434, 438 (Ct. App. 1994) (presence at *in-camera voir dire* of potential jurors; waiver not discussed). The right to be present at jury selection is also protected by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. *Ibid.* Jury selection, including the *voir dire* of potential jurors, is "a critical stage of the criminal proceeding," *Gomez v. United States*, 490 U.S. 858, 873 (1989), and every defendant in a criminal case has a constitutional right to be represented by counsel at each and every critical stage, *see United States v. Cronic*, 466 U.S. 648, 659 (1984) ("[A] trial is unfair if the accused is denied counsel at a critical stage of his trial."); *Herring v. New York*, 422 U.S. 853, 857–858 (1975) (defense right to make a closing summation in bench trial).

■

Deprivation of both the right of the defendant to be present and the right to have counsel present at jury

---

[3] Section 971.04(1)(c), STATS., 1997–98, which became effective on July 1, 1997, *see* Supreme Court Order No. 96–08, 207 Wis. 2d xv, xxxiv (1997), provides that a defendant shall be present "[d]uring voir dire of the trial jury." We perceive no substantive change in the statute.

selection is subject to a "harmless error" analysis. *See David J.K.*, 190 Wis. 2d at 735–738, 528 N.W.2d at 438–439 (defendant not present for *in-camera voir dire* of three jurors; counsel present); *see also State v. Burton*, 112 Wis. 2d 560, 334 N.W.2d 263 (1983) (trial court's entry into jury room to explain non-substantive matters to deliberating jury; neither the lawyers nor the defendant were present); *Spencer v. State*, 85 Wis. 2d 565, 571–572, 271 N.W.2d 25, 29 (1978) (counsel not present for receipt of verdict; no waiver by defendant); *State v. Peterson*, 220 Wis. 2d 474, 489, 584 N.W.2d 144, 150 (Ct. App. 1998) (defendant's presence when trial court determined how to respond to questions asked by deliberating jury; defendant's attorney present *via* telephone conference); *State v. McMahon*, 186 Wis. 2d 68, 85–89, 519 N.W.2d 621, 628–630 (Ct. App. 1994) (trial court's communications with deliberating jury; neither defendant nor counsel present); *State v. Mills*, 107 Wis. 2d 368, 320 N.W.2d 38 (Ct. App. 1982) (counsel absent during first ten minutes of trial court's instructions to the jury).

The "harmless error" rule recognizes that not all constitutional errors require automatic reversal. *See Burton*, 112 Wis. 2d at 570–571, 334 N.W.2d at 268; *David J.K.*, 190 Wis. 2d at 736, 528 N.W.2d at 438–439. The "harmless error" rule is also applicable to violations of § 971.04(1), STATS. *See Peterson*, 220 Wis. 2d at 489, 584 N.W.2d at 150. The rule requires the State to prove " 'beyond a reasonable doubt' " that the error did not contribute to the defendant's conviction. *See Burton*, 112 Wis. 2d at 570, 334 N.W.2d at 268. Stated another way, "an error is harmless if it does not [a]ffect the substantial rights of the party seeking reversal of the judgment." *State v. Mendoza*, 227 Wis. 2d 838, 864, 596 N.W.2d 736, 749 (1999) (citing RULE 805.18, STATS.,

made applicable to criminal cases by § 972.11(1), STATS., and *State v. Dyess*, 124 Wis. 2d 525, 547, 370 N.W.2d 222, 234 (1985)). Thus, whether the evidence presented to the jury "is sufficient to support the conviction" is not dispositive. *See Burton*, 112 Wis. 2d at 571, 334 N.W.2d at 268. Nevertheless, the error must be evaluated in the context of the trial as a whole. *See id.*, 112 Wis. 2d at 572–573, 334 N.W.2d at 269.

Just as the line between what is and what is not a permissible deprivation of assistance of counsel can be "thin"—*compare Geders v. United States*, 425 U.S. 80 (1976) (improper to prevent counsel from conferring with criminal-defendant client in the middle of defendant's examination during overnight recess), *with Perry v. Leeke*, 488 U.S. 272 (1989) (not improper to prevent counsel from conferring with criminal-defendant client in the middle of defendant's examination during fifteen-minute recess); *see Perry*, 488 U.S. at 280 ("line between" facts in *Geders* and the facts in *Perry* is "thin")—the line between when reversal is warranted and when it is not warranted when a defendant and his or her lawyer are not present for jury selection is also thin. The teachings of the various Wisconsin decisions that have considered similar questions persuade us that reversal is required here.

Wisconsin decisions applying the "harmless error" rule to a situation either where a defendant has been denied a right granted by § 971.04(1), STATS., or where the trial court erroneously acted when the defendant's lawyer was not present, concern situations where, in the context of the case, the deprivations were essentially *de minimis*. For example, in *Burton*, the trial judge entered the jury room to chat with the jurors about their progress in deliberations, to tell them what arrangements would be made for their dinner and

receipt of their verdict if they reached a verdict, and that they should not discuss the case outside of the jury room if their deliberations carried over to a second day. *Id.*, 112 Wis. 2d at 563–564, 334 N.W.2d at 264–265. In *Spencer*, the trial court received the verdict in the absence of the defendant's lawyer but polled the jury nevertheless. *Id.*, 85 Wis. 2d at 568, 271 N.W.2d at 27. In *David J.K.*, the trial court held an *in-camera voir dire* of three jurors in chambers. *Id.*, 190 Wis. 2d at 735, 528 N.W.2d at 438. Although the defendant was not present, his lawyer was. *Ibid.* The trial court found, and we concluded that the finding was not clearly erroneous, that the defendant agreed with his lawyer's decision not to strike the three jurors and that, accordingly, "any error was harmless because those jurors would have sat on the jury even had [the defendant] been present in chambers." *Id.*, 190 Wis. 2d at 738, 528 N.W.2d at 439.

In *McMahon*, the trial court communicated with the deliberating jury six times. *Id.*, 186 Wis. 2d at 85, 519 N.W.2d at 628. Four times, the trial court conferred with lawyers, and the defendant's lawyer participated by telephone. *Id.*, 186 Wis. 2d at 85–86, 519 N.W.2d at 628–629. The defendant was neither present nor a party to the conferences. In all but one instance, the trial court communicated with the jury without any of the lawyers or the defendant present. *Ibid.* One time, the trial court asked for and received from the defendant's lawyer a waiver of the defendant's appearance, and discussed with the State and the defendant's lawyer the jury's request to have the charging information reread to them. *Id.*, 186 Wis. 2d at 86, 519 N.W.2d at 629. The information was reread to the jury in open court; neither the defendant nor his lawyer were present. *Ibid. McMahon* found the trial court's

substantive communications with the jury, which were made after consultation with the defendant's lawyer, to be harmless error. *Id.*, 186 Wis. 2d at 88, 519 N.W.2d at 629.

In *Mills*, the trial court began instructing the jury ten minutes before the defense lawyer arrived. *Id.*, 107 Wis. 2d at 370, 320 N.W.2d at 39. Finding the error harmless beyond a reasonable doubt, *Mills* explained that the "attorney had only two roles with regard to the instructions": 1) "to insure [*sic*] that proper instructions were given"; and 2) to ensure that neither the judge nor the prosecutor did anything during instructions that prejudiced the defendant. *Id.*, 107 Wis. 2d at 371–372, 320 N.W.2d at 39. With respect to the former duty, *Mills* noted that the instructions given were a matter of record and thus could be analyzed to determine whether they accurately reflected the law. *Ibid.* With respect to the latter duty, *Mills* was "unable to conceive of any sufficiently prejudicial conduct of the judge or the prosecutor during the court's instruction of the jury that would not have been observed by the court or by Mills and yet would be sufficient to justify a new trial." *Id.*, 107 Wis. 2d at 372, 320 N.W.2d at 40. *Mills* opined that what it characterized as "the mere hypothetical possibility of error" did "not justify a new trial in this case." *Ibid.*

In *Peterson*, the defendant's lawyer was present and gave his input to the trial court on the legal issues involved in answering the jury's questions. *Id.*, 220 Wis. 2d at 489–490, 584 N.W.2d at 150–151. Thus, the defendant did not suffer any prejudice by not being present when the trial court decided how to answer the jury's question, especially because "the trial court's decision as to how to re-instruct was correct." *Ibid.*

This case is substantially different from those applying the "harmless error" rule for two major reasons. First, a defendant has an absolute right "to receive a fair trial by a panel of impartial jurors." *State v. Faucher*, 227 Wis. 2d 700, 715, 596 N.W.2d 770, 777 (1999). A potential juror's subjective bias is generally ascertained by that person's "responses and demeanor at voir dire." *State v. Kiernan*, 227 Wis. 2d 736, 746, 596 N.W.2d 760, 765 (1999); *see also Mendoza*, 227 Wis. 2d at 849, 596 N.W.2d at 742 ( "Subjective bias is usually discerned from the prospective juror's verbal [*sic*—should be "oral"] responses to questions as well as the juror's demeanor in giving those responses."). Unless a defendant and his or her lawyer are present when potential jurors are questioned, the subtleties of responses are lost—even if a transcript is made available to the defendant and defense counsel (this was not done here). *See Gomez*, 490 U.S. at 874–875 ("voir dire represents jurors' first introduction to the substantive factual and legal issues in a case"; their "gestures and attitudes" must be scrutinized to ensure impartiality; "no transcript can recapture the atmosphere of the voir dire"); *cf. Burton*, 112 Wis. 2d at 569, 334 N.W.2d at 267 (transcript of judge's statements to jury "cannot reveal a judge's facial expressions or tone of voice"; "Defense counsel and defendant must be present to have the opportunity to observe the judge's demeanor first-hand.").

Second, "the interplay between potential jurors and a defendant, while often subtle, is both immediate and continuous." *State v. Garcia-Contreras*, 953 P.2d 536, 541 (Ariz. 1998). Here, as in *Garcia-Contreras*, "[n]o one can tell what the prospective jurors might have thought when all of the key players were introduced save the defendant, whose whereabouts were

left mysteriously unexplained" and the "[d]efendant's absence may have damaged him in the eyes of the jury—some may have thought he had irresponsibly failed to show up for the first day of his trial." *Ibid.*

Although the trial court was well-intentioned by trying to save time and "weed out" jurors before Harris arrived and, for the most part, when Harris's lawyer was not in court, its extensive colloquy with potential jurors on the morning of September 23 essentially presented Harris and his lawyer with a pig in a poke. The State has not established that this did not adversely affect Harris's substantial rights under § 971.04(1)(c), STATS., and, therefore, has not shown that the error was harmless beyond a reasonable doubt. *Cf. State v. Erickson*, 227 Wis. 2d 758, 770, 596 N.W.2d 749, 756 (1999) ("courts have presumed prejudice when a defendant was denied counsel altogether at critical stages of the adjudicative process"); *State v. Ramos*, 211 Wis. 2d 12, 24, 564 N.W.2d 328, 333–334 (1997) (violation of defendant's statutory right to peremptory challenges of potential jurors not subject to a "harmless error" analysis even though "a fair and impartial jury was impaneled").

*By the Court.*—Judgment and order reversed, and cause remanded.