STATE of Wisconsin, Plaintiff-Respondent,

v.

Rodney K. STENSETH, Defendant-Appellant.†

Court of Appeals

*No. 02–3330–CR. Submitted on briefs June 24, 2003.—Decided August 5, 2003.*

2003 WI App 198

(Also reported in 669 N.W.2d 776.)

† Petition to review denied 10-21-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert A. Ferge*, Chippewa Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Rodney Stenseth appeals an amended judgment of conviction and an order denying his postconviction motion for a new sentencing hearing. Stenseth argues: (1) the State breached the plea agreement by implying the court should follow the sentence recommended by the presentence investigation report, rather than the sentence recommended by the plea agreement, and (2) he is entitled to a new sentencing hearing because his sentence was modified in his absence. We disagree with both of Stenseth's arguments and affirm the judgment and order.

## BACKGROUND

¶ 2. The State charged Stenseth on January 16, 2001, with four criminal counts of first-degree recklessly endangering safety and a misdemeanor count of disorderly conduct, with a repeat offender allegation included on each count. The charges arose out of activities that occurred at Stenseth's home late at night on January 5 into the early morning of January 6. Stenseth's wife called the police to their home after Stenseth yelled and screamed at her during an argu-

ment. When deputy sheriff Burt Zielke arrived at the home, Stenseth ran after Zielke with knives and attempted to stab Zielke. People at the scene, whom Stenseth also attempted to stab, subdued Stenseth.

¶ 3. Stenseth entered into a plea agreement. He pled guilty to one count of recklessly endangering safety, a Class D felony, with a maximum period of confinement of five years followed by a maximum of five years' extended supervision. The State moved to dismiss the remaining counts plus the repeat offender allegations. The State agreed to recommend two years' incarceration followed by four years' extended supervision, consecutive to any sentence Stenseth was currently serving.

¶ 4. The court accepted Stenseth's plea and dismissed the remaining counts and the repeater allegation in accordance with the plea agreement. A presentence investigation report was ordered. The report recommended eight years in prison and two years' extended supervision.

¶ 5. At the sentencing hearing, Stenseth called two witnesses: Stenseth's wife and a pastor. Both testified that they would support Stenseth when he was out of prison. His wife also testified that Stenseth had been responding to treatment. The State did not call any witnesses. Instead, the State referred to the presentence report, commenting that it agreed with some statements in the report. Stenseth objected and argued that the State's comments were an endorsement of the report's sentence recommendation, contrary to the plea agreement. The court asked the State if it was sticking with the plea agreement's sentence recommendation. The State said it was. Ultimately, the court imposed a sentence of seven years' confinement followed by three years' extended supervision.

¶ 6. Stenseth filed motions for postconviction relief requesting a new sentencing hearing. He argued, among other things, that the sentence was illegal because the period of confinement exceeded the maximum of five years.

¶ 7. The court held a telephone conference to discuss Stenseth's motions. Stenseth's attorney and the district attorney participated in the call. The court agreed that the original sentence was illegal, and ordered the sentence amended to five years' confinement followed by five years' extended supervision.

## DISCUSSION

### Breach of the plea agreement

¶ 8. Terms of a plea agreement and the historical facts surrounding the conduct that allegedly constitutes a breach are findings of fact that we will not disturb unless they are clearly erroneous. *State v. Williams*, 2002 WI 1, ¶ 5, 249 Wis. 2d 492, 637 N.W.2d 733 (*Williams II*). Whether the conduct actually constitutes a breach, however, is a question of law that we review independently. *Id.*

¶ 9. Stenseth argues that the breach is a close call and that he should therefore be given the benefit of the doubt. Consequently, he maintains that we should interpret the State's comments during the sentencing hearing as an adoption of the presentence investigation report's sentence recommendation. Stenseth bases his argument on *State v. Williams*, 2001 WI App 7, 241 Wis. 2d 1, 624 N.W.2d 164 (*Williams I*).

¶ 10. However, the supreme court has expressly rejected the close case rule of *Williams I. See Williams*

*II*, 249 Wis. 2d 492, ¶ 20. Instead, the supreme court has determined that we must examine the entire sentencing proceeding to evaluate whether a prosecutor's statements constitute a breach of the plea agreement. *Id.*, ¶ 46. A defendant is entitled to relief when there is a material and substantial breach. *Id.*, ¶ 38. A breach is material and substantial when there is a "violation of the terms of the agreement that defeats the benefit for which the accused bargained." *Id.*

■

¶ 11. When discussing a plea recommendation, the State may not give a less than neutral recitation of the agreement's terms. *Id.*, ¶ 42. However, "A prosecutor may convey information to the sentencing court that is both favorable and unfavorable to an accused, so long as the State abides by the plea agreement." *Id.*, ¶ 44. Unfavorable information may be used to support the agreed-upon recommendation. *Id.*, ¶ 55.

■

¶ 12. Here, the State's reference to the plea agreement was not less than neutral. It simply agreed with the report that Stenseth needed to be incarcerated, without commenting on the sentence recommendation in the report. Testimony given by Stenseth's witnesses could have supported a request for probation only. The State referred to information in the presentence investigation report only to support the recommendation that Stenseth be sentenced to prison rather than straight probation. In fact, when Stenseth objected to the State's use of the presentence report in its argument, the court noted:

> [T]he District attorney could well have inferred from the tenor and tone of your [Stenseth's attorney's] presentation of the witnesses that you were going to

recommend a straight probationary term. And it is consistent with her plea agreement and with her commitment to you and to the defendant to say that's not a good idea, Judge.

There really has to be, in the state's view, actual confinement. There actually has to be a sentence. There actually has to be extended supervision. Straight probation should not be the order of the Court. And that interpretation of counsel's remarks is consistent with her plea agreement to you.

Although Stenseth's attorney stated he was not going to argue for probation, the court was free to impose any sentence it thought appropriate, including probation. There was nothing improper in the State arguing facts in opposition to probation.

¶ 13.  At no time did the State argue for anything other than the agreed-upon sentence. Nor did it mention that the presentence report recommended a longer sentence. The State properly used the presentence report in support of the plea agreement's sentence recommendation. Consequently, the State did not violate the terms of the plea agreement, and thus there was no breach.[1]

---

[1] Stenseth also argues other errors he contends support a finding that the State breached the plea agreement. These include:  the sentence was illegal, the court failed to give Stenseth an oral explanation of the sentence and to give Stenseth sentence credit, and the court included the repeat offender provision in the sentence. However, these issues have no bearing on whether the State breached the plea agreement and we do not address them.

## Stenseth's absence from the postconviction hearing

¶ 14. The court originally sentenced Stenseth to seven years' confinement and three years' extended supervision after being convicted of recklessly endangering safety, a Class D felony. However, the maximum period of confinement for a Class D felony conviction is five years, followed by a maximum of ' five years' extended supervision. WIS. STAT. §§ 939.50, 973.01(2)(b) (1999–2000).[2]

¶ 15. After Stenseth filed his postconviction motions, the court and the attorneys participated in a telephone conference. During the conference, the court agreed that the original sentence was illegal and amended the sentence to five years' confinement followed by five years' extended supervision. Stenseth argues that the modification amounted to a resentencing and that he had a right to be present. Because he was not present, Stenseth claims he is entitled to a new sentencing hearing.

¶ 16. WISCONSIN STAT. § 971.04(1)(g) provides that a defendant shall be present "[a]t the pronouncement of judgment and the imposition of sentence." The State concedes that the modification amounted to a resentencing and that Stenseth had the right to be present. However, the State argues this was harmless error, and we agree.

¶ 17. Violation of the right to be present under Wis. Stat. 971.04(1) is subject to a harmless error

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

analysis. *State v. Peterson*, 220 Wis. 2d 474, 489, 584 N.W.2d 144 (Ct. App. 1998). An error is harmless if it does not affect the defendants substantial rights. *State v. Harris*, 229 Wis. 2d 832, 840, 601 N.W.2d 682 (Ct. App. 1999).

¶ 18. In *Peterson*, the court found the defendants absence during supplemental jury instructions was harmless because the defendant had failed to establish any prejudice resulting from the violation of his right to be present and also had failed to advance on appeal any specific contribution he would have made had he been present. *Peterson*, 220 Wis. 2d at 489.

¶ 19. Here, Stenseth already had a full sentencing hearing. He had the opportunity to present witnesses and did, in fact, present two witnesses. He exercised his right of allocution. His attorney made an argument on Stenseths behalf. At the end of the presentations, the court made detailed findings and extensive observations, explaining the reasons for its sentence. Stenseth does not indicate any additional witnesses he would have called at a resentencing hearing, any new information he would have provided the court or any further arguments he would have presented.

¶ 20. Further, we note that when the court recognized the original sentence had been illegal, the court stated that did not change the fact that it had intended that [Stenseth] should be supervised for the full ten years. Further, the court added, I wanted the public protected in one way or another for a total of ten years. Stenseth does not indicate anything he would have done to effect a different outcome. In short, Stenseth does not suggest any contribution he would have made at the resentencing or any way in which he was prejudiced. The error was harmless.

*By the Court.*—Judgment and order affirmed.