KESSLER, P.J.
¶ 1 Deshawn Harold Jewell appeals the judgment of conviction, following a jury trial, of one count of armed robbery and one count of bail jumping. Jewell also appeals the order denying his postconviction motion for relief. Jewell argues that the trial court violated his right to be present during trial when the court answered a question submitted by the jury during deliberations. He also argues that the sentencing court imposed an increased sentence because Jewell exercised his right to remain silent at the sentencing hearing. We affirm.
BACKGROUND
¶ 2 On May 1, 2015, Jewell was charged with one count of armed robbery and one count of bail jumping for the armed robbery of C.F. According to the criminal complaint, on March 21, 2015, C.F. was walking to her car after leaving a Milwaukee-area bar when a car pulled up near her. The driver of the car exited, approached C.F. and said, "Give me your purse, or I'll shoot you." C.F. resisted, but the driver was able to take her purse and drive away. C.F. told police that the robber's knit cap fell off during the struggle for her purse. A DNA analysis of the cap revealed a match to Jewell. C.F. also identified Jewell from a photo array.
Trial
¶ 3 The matter proceeded to trial where multiple witnesses testified. C.F. stated that on the night of the robbery, she was walking to her car with a friend after leaving a bar. When she reached her car, another vehicle pulled up in front of her. The driver got out of the car and demanded C.F.'s purse, telling her he had a gun and was prepared to shoot. C.F. resisted, the two scuffled, and ultimately, the robber fled with her purse. C.F. stated that during the scuffle the robber lost his knit cap.
¶ 4 C.F. identified Jewell in the courtroom as the man who robbed her. She also testified that approximately one month after the robbery, Milwaukee Police Officer Jeffrey Emanuelson, one of the officers who responded to the robbery, went to C.F.'s home with pictures in a series of eight folders. C.F. identified Jewell in the photo array.
¶ 5 Emanuelson testified that approximately one month after the robbery, he compiled a photo array containing a picture of Jewell and five pictures of people with similar attributes. Emanuelson stated that prior to showing a victim a photo array, he gives the victim a form explaining that the suspect may or not be a part of the photo array and that "[i]t is important to pick out the suspect, as well as exclude innocent people." Emanuelson stated that C.F. was shown the form prior to viewing the photo array.
¶ 6 Emanuelson also stated that in addition to the photo array, he compiled a "six pack," which is a single sheet containing a photograph of each person in the photo array. The six pack is for police internal use only and is not shown to the victim. Jewell's photo was the second photo in the six pack. Emanuelson stated that the standard process is for officers to compile a six pack and then use those photos for the photo array. The photos in the photo array are shuffled and placed in individual folders. A total of eight folders are given to the victim-the first six folders contain photos and the last two are empty.
¶ 7 In this case, Emanuelson stated that his partner, Officer John Kohler, shuffled the photos and placed them in their individual folders. Emanuelson did not know which folder contained Jewell's photo. C.F. identified Jewell in the third folder. Emanuelson stated that he followed the standard procedure by showing C.F. each of the eight folders individually. C.F. told Emanuelson that she was "100 percent" certain that the man in folder "3" was the one who robbed her.
¶ 8 Kohler also testified about the process of compiling photo arrays, telling the jury:
My partner, Officer Emanuelson, had prepared the array, and part of that process is to shuffle the folders. This way the person showing the photo array, and in this case my partner, Officer Emanuelson, does not know the order or where the suspect is located in there. So my role in the matter was to shuffle them and place the suspect, like I said, where he doesn't know it is.
¶ 9 At the close of the State's case, the six pack was published to the jury without objection. The parties also agreed, at the close of trial, that the six pack should be sent to the jury if it made a request during deliberations.
¶ 10 During deliberations, the jury sent a note to the trial court requesting to see the six pack. In the absence of the parties, the trial court sent the six pack to the jury. Shortly thereafter, the jury sent another note asking, "Is the '6 pack' numbering system the same as the order as the photo/folders in the photo array?" The trial court, again in the absence of the parties, wrote a one word answer on the note and sent it back to the jury: "No."
¶ 11 When the parties returned for the verdict, the trial court made a record of the jury's questions, telling the parties:
At approximately 1:45, they sent out the first question. "May the jurors see the six-pack photo exhibit?" And pursuant to negotiation-or our talking before we adjourned in the morning, I sent back Exhibit 5.
And they immediately sent back another letter-another note to me saying, Is the six-pack numbering system the same as the order on the photo folders in the photo array-in the six pack? The Number 2, the folders was Number 3. Based upon the testimony that we received on how the six pack was put together and based upon my 40 years of doing this, they are never the same; or if they are the same, it's coincidence. In fact, they never can be the same because number 1 in-the number 1 folder is always blank so is the number 7 folder, if I recall the testimony right. So therefore, I sent back the answer no with regard to that. And it was shortly after that that they came back with a verdict.
Defense counsel responded:
Just that on the second question, my preference would have been to have the jury talk about it in their collective memory of the testimony. Although I do know as a defense attorney that the six-pack and the photo array are never the same.
The trial court told counsel that it would have overruled her request because it could have confused the jury.
¶ 12 The jury found Jewell guilty as charged.
Sentencing
¶ 13 At the sentencing hearing, the sentencing court asked Jewell whether he wished to exercise his right of allocution. The following exchange ensued:
THE DEFENDANT: Yeah. I want to apologize to the victim.
THE COURT: For what?
THE DEFENDANT: For this. For what she had to go through as a human being.
THE COURT: Did you do it?
THE DEFENDANT: Sir?
THE COURT: You don't have to tell me.
THE DEFENDANT: I just wanted to say that I was convicted and I take full responsibility for what happened to her.
THE COURT: The only way you can take full responsibility is if you are the guy that did it. If you are not prepared to admit that, you are not taking full responsibility. You can express remorse for what happened to her that night, but the question is: Are you the cause? The jury said it was. But you don't have to admit it if you don't want to.
THE DEFENDANT: I don't want to put that on the record.
THE COURT: Okay.
THE DEFENDANT: I do want to apologize and I wish this never happened to her.
¶ 14 The sentencing court then discussed the relevant sentencing factors, Jewell's age, education, family, previous record, the impact of the crime on the victim, and Jewell's failure to accept responsibility, stating:
You say you are sorry. But the question is: For what? For what the woman went through. Okay. I can buy that. You accept absolutely no responsibility for what you did that night. If you were truly sorry, you would of got up and said, Judge, I did it. Then I could give you the points for that. But I can't give you points for that.
¶ 15 The sentencing court sentenced Jewell to thirteen years' imprisonment on the armed robbery count, bifurcated as eight years of imprisonment and five years of extended supervision. On the bail jumping count, the court sentenced Jewell to one year of initial confinement and one year of extended supervision, concurrent to the armed robbery sentence.
Postconviction Motion
¶ 16 Postconviction, Jewell moved for a new trial, or alternatively for a new sentencing hearing. Jewell argued that "the [c]ourt violated Jewell's constitutional and statutory right to be present, his constitutional right to counsel, and his right to have his case decided free from extra-record infiltration when it answered the deliberating jury's question with a fact not in evidence to the detriment of Jewell without his or his counsel's presence." Specifically, Jewell argued that the trial court answered the jury's question sua sponte with facts not in the record because "[n]o witness explained the six-pack numbering system, nor its relationship, if any, to the photo array shown to C.F." Alternatively, Jewell argued that "a new sentencing hearing is required because the [c]ourt penalized Jewell for exercising his constitutional right to remain silent in the face of the [c]ourt's insistence upon a confession." The postconviction court denied Jewell's motion without a hearing. This appeal follows.
DISCUSSION
¶ 17 On appeal, Jewell raises the same issues raised in his postconviction motion.
Jewell's Right to be Present
¶ 18 Every defendant has the "right to be represented by counsel at all critical stages of the trial," as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 7 of the Wisconsin Constitution. State v. Carter , 2010 WI App 37, ¶¶ 18-19, 324 Wis. 2d 208, 781 N.W.2d 527 (citation omitted). A "critical stage is any point in the criminal proceedings when a person may need counsel's assistance to assure a meaningful defense."Id. , ¶ 18 (citation omitted).
¶ 19 Also included in a defendant's constitutional rights is the "right to be present at any stage of the criminal proceeding that is critical to its outcome if [the accused's] presence would contribute to the fairness of the procedure." Id. , ¶ 19 (brackets in Carter ; citation omitted). Additionally, in Wisconsin, defendants have a statutory right to be present during all stages of a trial. See WIS. STAT. § 971.04(1) (2015-16).[1] "The interpretation and application of constitutional and statutory provisions are questions of law that we review de novo ." See State v. Alexander , 2013 WI 70, ¶ 18, 349 Wis. 2d 327, 833 N.W.2d 126.
¶ 20 In Alexander , our supreme court stated that the test for determining whether a defendant's presence is constitutionally required during a criminal proceeding is "whether his [or her] absence would deny him [or her] a fair and just hearing." Id. , ¶ 1. The court noted several factors that the trial court may consider in making this determination, including "whether the defendant could meaningfully participate, whether he [or she] would gain anything by attending, and whether the presence of the defendant would be counterproductive." Id. , ¶ 30. The court also concluded however, that in that case "due process and WIS. STAT. § 971.04 require[ ] ... the defendant's attorney be present." Alexander , 349 Wis. 2d 327, ¶ 24.
¶ 21 An examination of a defendant's right to be present is subject to the harmless error analysis. See State v. Stenseth , 2003 WI App 198, ¶¶ 19-20, 266 Wis. 2d 959, 669 N.W.2d 776. "The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction." State v. Sullivan , 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998). A reasonable possibility is one which is sufficient to undermine confidence in the outcome of the proceeding. State v. Patricia A.M. , 176 Wis. 2d 542, 556, 500 N.W.2d 289 (1993). We must look to the totality of the record. See id. at 556-57.
¶ 22 Here, Jewell argues that the trial court violated his right to be present when it responded "No" to the jury's question asking whether the order of photos in the six pack and the photo array were the same. While we agree that defense counsel at least should have had the opportunity (in person or telephonically) to suggest a response to the jury's question before the trial court responded, we conclude that the error was harmless.
¶ 23 First, the trial court answered the question based on undisputed trial testimony. Emanuelson testified that the six pack is for internal use only and that the photos contained in the photo array are shuffled before a victim views the folders. Kohler confirmed the shuffling process. Defense counsel conceded that the numbering systems are different. Indeed, Jewell's photo was second in the six pack and third in the photo array, confirming the difference in numbering systems. Moreover, when defense counsel told the trial court that counsel would have preferred the jury be told to rely on its collective memory, the trial court rejected the suggestion. In short, the trial court's answer was factually correct. The fact would not have changed even if Jewell and/or his counsel were present when the trial court answered the jury's question. See May v. State , 97 Wis. 2d 175, 184-85, 293 N.W.2d 478 (1980) (where the trial court answered the deliberating jury's question outside of the presence of the defendant and counsel, the court committed harmless error because its answer was correct and not prejudicial to the defendant).
¶ 24 Second, the trial court's error does not undermine our confidence in the outcome of the trial because there is sufficient evidence to support the verdict. C.F. twice identified Jewell as the man who robbed her-once during the photo array, where she expressed "100 percent" certainty in her identification, and again at trial. C.F. also testified that during the struggle for her purse, she knocked Jewell's knit cap off of his head. The cap contained Jewell's DNA. We therefore cannot conclude that without the trial court's answer, the result of the trial would have been different.
Jewell's Right to Remain Silent at Sentencing
¶ 25 Sentencing lies within the sentencing court's discretion. State v. Gallion , 2004 WI 42, ¶ 17, 270 Wis. 2d 535, 678 N.W.2d 197. "When the exercise of discretion has been demonstrated, we follow a consistent and strong policy against interference with the discretion of the [sentencing] court in passing sentence." State v. Stenzel , 2004 WI App 181, ¶ 7, 276 Wis. 2d 224, 688 N.W.2d 20. We presume the sentencing court acted reasonably, and the burden is on the defendant to show that the sentence was unreasonable or unjustifiable. See State v. Davis , 2005 WI App 98, ¶ 12, 281 Wis. 2d 118, 698 N.W.2d 823. "Unjustifiable bases for a sentence include irrelevant or improper considerations." State v. Fuerst , 181 Wis. 2d 903, 910, 512 N.W.2d 243 (Ct. App. 1994) (citation omitted).
¶ 26 A sentencing court's sole reliance on a defendant's refusal to admit guilt amounts to an improper consideration. Id. at 915. While a sentencing court cannot punish a defendant for maintaining his or her innocence or compel an admission of guilt, it is, however, permitted to note a defendant's lack of remorse. See State v. Wickstrom , 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984). "A [sentencing] court does not erroneously exercise its discretion when it considers a defendant's refusal to admit guilt as one of a number of factors at sentencing, so long as the court does not give one factor undue weight." State v. Carrizales , 191 Wis. 2d 85, 96, 528 N.W.2d 29 (Ct. App. 1995).
¶ 27 Jewell argues that the sentencing court improperly increased his sentence because he invoked his right to remain silent and refused to admit guilt at the sentencing hearing. Jewell's argument ignores both his statements at the hearing and the factors the court did consider.
¶ 28 Contrary to Jewell's implication, the sentencing court did not attempt to force Jewell to admit his guilt and then punish him for refusing to do so. Jewell himself stated that he wished to apologize to the victim. The court simply sought to establish Jewell's reasons for the apology. The court then properly noted Jewell's lack of remorse when considering his character, but considered several other factors as well. Specifically, the court considered the impact of the crime on the victim, the violent nature of the crime, Jewell's criminal record, and the need to protect the public. The court did not solely rely on Jewell's refusal to admit guilt. Jewell is not entitled to a new sentencing hearing.[2]
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

To the extent we have not addressed an argument raised on appeal, we conclude that our opinion is dispositive and the argument is deemed rejected. See State v. Waste Mgmt. of Wis., Inc. , 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978) ("An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.").