STATE of Wisconsin, Plaintiff-Respondent,

v.

Brandon J. CARTER, Defendant-Appellant.

Court of Appeals

*No. 2009AP378–CR. Submitted on briefs January 5, 2010.
—Decided February 17, 2010.*

2010 WI App 37

(Also reported in 781 N.W.2d 527.)

213

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Melinda A. Swartz*, assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Christopher G. Wren*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Brandon J. Carter appeals from a judgment convicting him of being a felon in possession of a firearm and of disorderly conduct while armed, contrary to Wis. Stat. §§ 941.29(2)(a), 947.01, and 939.63 (2005–06).[1] He also appeals from the trial court's order denying his motion for postconviction relief. Carter ar-

---

[1] The judgment of conviction erroneously states that Carter was convicted of disorderly conduct while armed. In fact, Carter

gues that he was denied his right to counsel and his right to be present when the trial court took sworn testimony from a witness during an *ex parte* hearing and later allowed the testimony to be introduced during his jury trial to impeach the witness. In addition, Carter contends that he was denied the effective assistance of trial counsel when counsel failed to object to testimony during his jury trial that he was known to carry firearms.

¶ 2. Because we agree with Carter that he was denied his right to counsel and his right to be present, and further conclude that the trial court's error was not harmless, we reverse and remand for a new trial. Although we have ordered a new trial, we would be remiss if we did not address Carter's ineffective assistance of counsel claim because the State will surely seek to admit the testimony on which this claim is based during the next trial. Thus, we further conclude that although the testimony that Carter was known to carry firearms was other acts evidence, it was offered for a permissible purpose, was relevant, and its probative value was not substantially outweighed by the danger of unfair prejudice. Consequently, trial counsel was not ineffective for failing to object to its admission.

## I. BACKGROUND.

¶ 3. Carter was charged with being a felon in possession of a firearm and disorderly conduct while armed. The charges stem from an incident that occurred the morning of October 9, 2005. A warrant was issued and Carter was arrested in Iowa approximately seven months later.

---

was convicted of disorderly conduct (not while armed). This court directs the clerk of courts to correct the error.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 4. A jury trial was set to take place on October 16, 2006. However, on that date, the State advised the trial court that it was not able to proceed because several of its witnesses, one of whom was Felicia Jones, had failed to appear. The court adjourned the trial and issued body attachments for Felicia Jones and her mother, Haneefah Jones.[2]

### *October 30, 2006 Hearing*

¶ 5. On October 30, 2006, the State appeared in court for a hearing on the return of Felicia's bench warrant. At that time, the trial court discussed with Felicia the importance of her appearing at the adjourned trial date. In addition, the court placed Felicia under oath and questioned her about the incident. The following is an excerpt from the court's questioning:

> THE COURT: And let's see here, so on October 9th of last year, you know what day I'm talking about? The day this incident happened?
>
> [FELICIA]: Yes.
>
> THE COURT: What happened?
>
> [FELICIA]: Me and my sister[']s baby's daddy.
>
> THE COURT: Slow down.
>
> [FELICIA]: Me and my sister's baby's daddy, got into a fight over something that wasn't worth it. He pulled the gun out on me.
>
> THE COURT: Who pulled the gun?
>
> [FELICIA]: Brandon.

---

[2] To avoid confusion, we reference these women by their first names throughout the remainder of this opinion.

THE COURT: Brandon Carter?

[FELICIA]: Yes.

THE COURT: Where did he get it?

[FELICIA]: I don't know.

THE COURT: Where did he pull it out of?

[FELICIA]: I don't know, because my sisters pushed me to the back and when I came back to the front, he had the gun.

. . . .

THE COURT: So, he puts the gun on you and then what?

[FELICIA]: My sisters pushes [sic] him out the door and then I called police and when police came, he was gone.

. . . .

THE COURT: ... [A]t the point you first saw the gun, Mr. Carter was holding it at that time and pointing it at you?

[FELICIA]: Yes, sir.

THE COURT: Did he say anything?

[FELICIA]: He said he will shoot me if I didn't stop touching the baby, because he didn't want me to touch his baby, which [sic] was my niece.

Neither Carter nor his attorney was present during the court's questioning.

## *Jury Trial*

### *Haneefah Jones*

¶ 6. The State called Haneefah as its first witness at Carter's trial. Haneefah testified that on the date of the incident she lived in an apartment in Milwaukee with her three daughters and some of her grandchildren. Carter is the father of two of Haneefah's grandchildren. Gregory Green, Carter's half-brother, was the boyfriend of Haneefah's oldest daughter and is the father of that daughter's children. Haneefah testified that Carter and Green were at her apartment on October 9, 2005, and that the police came to the apartment that day; however, she could not recall talking to the police or what caused them to be there. Haneefah further testified that she never saw Carter with either a duffel bag or a gun.

### *Felicia Jones*

¶ 7. Next, the State called Felicia. She testified that she called the police on October 9, 2005, after she and Carter "got into it." Felicia explained:

Q. What caused you to call the police when there was a verbal argument on this day?

A. Because the man [i.e., Carter] reached in his bag and pulled out, I don't know if it was a gun, but I said it was a gun so—

Q. He reached in the bag. Can you tell me do you mean like a paper bag or some other kind of bag?

A. It was like a luggage bag . . . .

. . . .

Q . . . . Now, you say that he reached into his bag and like a luggage bag and he pulled out something you thought was a gun, is that right?

218

A. Yes.

Q. And what made you think it was a gun?

. . . .

A. I done heard stories about him before with guns.

¶ 8. According to Felicia, her mother's apartment was not well lit on the day of the incident because blankets covered the windows. She testified that she was approximately eight to ten feet away from Carter when he pulled the object out of the bag. At that point, she claimed Carter was "rushed" out the door by her family members and by Green.

¶ 9. Felicia was then shown a gun that police had found in Green's pocket on the day of the incident. She testified that it was not the same object that Carter had with him at the time of the incident.

¶ 10. On redirect, Felicia was shown the transcript from the October 30, 2006 hearing. Felicia confirmed that her memory was clearer on that date than it was during the jury trial. She was then impeached with her testimony from the hearing that Carter had "pulled" a gun on her. On re-cross, however, Felicia stated that her trial testimony, that she never saw Carter with a gun, was truthful.

### Police Officer Gary Thundercloud

¶ 11. Officer Thundercloud testified that he responded to a dispatch directing him to the apartment where Haneefah and her daughters resided. Officer Thundercloud read the jury the computer report that was generated as part of the dispatch, which provided: " 'Felicia Jones. Subject with gun. Com-

ment: Brandon Carter. Blue and white striped shirt with blue j's. Has a handgun. Pointed it at caller. Actor is 25 years of age, on scene.' " Shortly after receiving the dispatch, Officer Thundercloud located Green with a loaded handgun behind the apartment building. Officer Thundercloud did not locate Carter at the scene.

### Gregory Green

¶ 12. Green testified that an argument between Carter and two of the Jones sisters took place on October 9, 2005, at Haneefah's apartment, where Green was staying at the time. Like Felicia, Green testified that despite the fact that the argument took place mid-day, it was not well lit inside of the apartment. According to Green, Carter pulled an object from a book bag Carter had with him. At trial, Green claimed he could not see what the object was; however, he learned it was a gun when Carter handed it to him. Carter then left the apartment. Green testified that he put the gun, which he planned to throw away, into his pocket. According to Green, the gun the police found on him was the gun that Carter had given him.

### Police Officer Greg Geniesse

¶ 13. As its final witness, the State called Officer Geniesse. He spoke with Felicia on the day of the incident. Felicia told Officer Geniesse that she called police after Carter displayed what she believed to be a firearm. Officer Geniesse testified that Felicia told him "she didn't actually see it, but she heard a click, which in her mind she believed it to be a firearm based on the way that click sounded to her." He further testified:

Felicia stated that [Carter] had his back to her and that he pulled something from a duffel bag and she heard a

220

click, which she believed to be a firearm being loaded, and she also stated that she also believed it to be a firearm because she's known him to carry firearms in the past.

Felicia told Officer Geniesse that Green escorted Carter from the apartment.

¶ 14. Officer Geniesse also spoke with Haneefah on the day of the incident. He recalled that Haneefah told him "that she observed [Carter] remove a dark-colored semiautomatic pistol from a duffel bag that was in the apartment."

¶ 15. The trial court subsequently advised the jury that Carter had stipulated to a prior felony conviction; thereafter, both the State and the defense rested their cases. After three hours of deliberation, the jury found Carter guilty of being a felon in possession of a firearm and of disorderly conduct. The jury did not find that Carter committed the crime of disorderly conduct while threatening to use a dangerous weapon.[3] On the

---

[3] During sentencing, the following exchange between Carter and the trial court occurred regarding what Carter perceived as an inconsistency in the jury's verdicts:

> MR. CARTER: How could they [i.e., the jury] believe I have a firearm when I was charged with disorderly conduct while armed and felon in possession of a firearm and they found me not guilty of while armed, but found me guilty of possession of [a] firearm.

> THE COURT: It makes sense to me. In this case I think the jury was not convinced that you used the gun in the argument with the young lady [i.e., Felicia]. That you pulled the gun out at the end or didn't threaten her with the gun or they also could have decided she didn't see the gun and therefore didn't see it was a gun and therefore she didn't feel you were armed at the time you were yelling at her and that is why they didn't find you guilty of Disorderly Conduct While Armed. I don't have any problem with that. Logical reasoning on the part of the jury, if that is what they decided.

221

felon in possession of a firearm charge, Carter was sentenced to fifty-four months of initial confinement and sixty months of extended supervision, for a total sentence of nine years and six months. On the disorderly conduct charge, Carter received a three-month concurrent sentence.

¶ 16. Carter filed a postconviction motion, arguing that he was denied his right to counsel and his right to be present when the trial court took sworn testimony from Felicia during an *ex parte* hearing, which was later used to impeach her during trial. He also argued that he was denied the effective assistance of trial counsel. Carter's postconviction motion was denied without a hearing, and he now appeals.

## II. ANALYSIS.

A. *Carter was denied his right to counsel and his right to be present.*

■ ■

¶ 17. Carter argues that he was denied his constitutional right to counsel and his constitutional and statutory right to be present when the trial court conducted an *ex parte* hearing and took sworn testimony from Felicia relating to the substantive issues of the case. "The interpretation and application of a constitutional provision and a statute are questions of law," and our review is *de novo. State v. Anderson*, 2006 WI 77, ¶ 37, 291 Wis. 2d 673, 717 N.W.2d 74. In contrast, we review "the trial court's findings of historical or evidentiary facts . . . under the clearly erroneous standard." *State v. David J.K.*, 190 Wis. 2d 726, 738, 528 N.W.2d 434 (Ct. App. 1994).

¶ 18. "An accused has the [constitutional] right to be represented by counsel at all critical stages of the trial." *Anderson*, 291 Wis. 2d 673, ¶ 67. "A critical stage is any point in the criminal proceedings when a person may need counsel's assistance to assure a meaningful defense." *Id.*, ¶ 68. As a general rule, the Sixth Amendment right to counsel attaches upon the filing of either a criminal complaint or a warrant for arrest. *State v. Raflik*, 2001 WI 129, ¶ 50, 248 Wis. 2d 593, 636 N.W.2d 690.

¶ 19. In addition, an accused has a "constitutional right to be present[, which] derives from the right to be heard and confront witnesses and from the accused's right to due process." *Anderson*, 291 Wis. 2d 673, ¶ 38. This amounts to a "guaranteed . . . right to be present at any stage of the criminal proceeding that is critical to its outcome if [the accused's] presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). Both the right to be present and the right to have counsel present are guaranteed by article I, section 7 of the Wisconsin Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.[4] *Anderson*, 291 Wis. 2d 673, ¶ 38.

---

[4] The Sixth Amendment to the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

Carter's statutory right to be present is set forth in WIS. STAT. § 971.04(1)(d). *See id.* (**"971.04 Defendant to be present. (1)** . . . [T]he defendant shall be present: ... (d) At any evidentiary hearing.").

■

¶ 20. Carter asserts that the October 30, 2006 hearing became a critical stage of the proceedings when the court took sworn testimony from Felicia about substantive issues in the case and later allowed that testimony to be used to impeach her trial testimony. In addition, Carter argues that the hearing "morphed into an evidentiary hearing, albeit an *ex parte* evidentiary hearing, when the court decided to swear Ms. [Felicia] Jones and then take testimony from her."

¶ 21. The State concedes the validity of Carter's claim that he was denied his constitutional and statutory rights to counsel and to be present at the *ex parte* hearing, writing:

> The record does not indicate why the [trial] court

---

"The Fourteenth Amendment to the United States Constitution is relevant here because the defendant's Sixth Amendment rights are applied to the States through incorporation in the due process clause of the Fourteenth Amendment." *State v. Anderson*, 2006 WI 77, ¶ 38 n.15, 291 Wis. 2d 673, 717 N.W.2d 74.

Article I, section 7 of the Wisconsin Constitution, which provides for the "[r]ights of accused," states:

In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

swore Felicia Jones and took testimony from her about the substance of the charges. Whatever the reason, the State will assume, for purposes of this appeal, that the proceeding "morphed" at that point into a critical stage at which Carter had a constitutional right to appear, either personally or by his lawyer, and a statutory right to personal presence.

What the State disputes is whether Carter's absence caused him any harm.

■

¶ 22. When a violation of a defendant's constitutional or statutory right to be present at any portion of his trial proceedings is alleged, the State, as beneficiary of any error, has the burden of proving that the error was harmless. *See Anderson*, 291 Wis. 2d 673, ¶ 45; *see also State v. Peterson*, 220 Wis. 2d 474, 489, 584 N.W.2d 144 (Ct. App. 1998) (holding "that violations of [Wis. Stat. § 971.04], like violations of a defendant's constitutional rights to be present, are subject to harmless error analysis"). The same holds true where a defendant's constitutional right to be represented by counsel is at issue. *See Anderson*, 291 Wis. 2d 673, ¶¶ 45, 75–76.[5]

---

[5] In *Anderson*, our supreme court recognized that "[o]rdinarily, the absence of counsel at a critical stage of the trial is not subject to harmless error analysis." *Id.*, 291 Wis. 2d 673, ¶ 74. However, the *Anderson* court went on to identify precedent establishing that there may be some circumstances involving a violation of the right to counsel when a harmless error analysis should be employed. *See id.*, ¶ 75; *see also United States v. Morrison*, 449 U.S. 361, 365 (1981) ("[C]ertain violations of the right to counsel may be disregarded as harmless error."). We agree with the parties that a harmless error analysis should be employed here. *See Satterwhite v. Texas*, 486 U.S. 249, 257–59 (1988) (utilizing harmless error test in review of a violation of Sixth Amendment right to counsel arising out of the erroneous

¶ 23. "To determine whether an error is harmless, this court inquires whether the State can prove 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *State v. Jorgensen*, 2008 WI 60, ¶ 23, 310 Wis. 2d 138, 754 N.W.2d 77 (citation and one set of quotation marks omitted). A number of factors assist us in making this determination:

> (1) the frequency of the error; (2) the importance of the erroneously admitted evidence; (3) the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; (4) whether the erroneously admitted evidence duplicates untainted evidence; (5) the nature of the defense; (6) the nature of the State's case; and (7) the overall strength of the State's case.

*See id.* The facts of this case compel us to conclude that the error was not harmless.

■■

¶ 24. Although the error in allowing the October 30, 2006 testimony to be used to impeach Felicia's trial testimony occurred only once, the testimony was important. *See id.* There was no physical evidence connecting Carter to the gun, and he was not present at the scene when the police arrived. Accordingly, the jurors' credibility determinations were paramount. Felicia's October 30, 2006 testimony was the only time Felicia stated that she saw Carter with a gun, and in this regard, it differed

admission of a doctor's testimony which was based on a psychiatric examination conducted outside the presence of and without the advice of counsel); *Moore v. Illinois*, 434 U.S. 220, 222–23, 232 (1977) (remanding for harmless error determination following introduction of testimony identifying the accused from uncounseled line-up conducted in violation of the Sixth Amendment).

significantly from the statement she initially made to Officer Geniesse and from her trial testimony. At trial, Felicia testified that she did not see Carter with a gun. Moreover, in her statement to Officer Geniesse on the day of the incident, Felicia never claimed to have seen Carter with a firearm, offering only that he displayed what "she believed to be a firearm."

¶ 25. According to the State, "[Carter's] presence would not have made any difference in relation to the harm he alleges: that the use of this testimony somehow resulted in a conviction that would not have occurred otherwise." The State continues: "At best, defense counsel could have obtained a contradicting denial that [Felicia] had seen Carter with a gun—the precise results that defense counsel obtained from both direct examination and cross-examination at trial." (Record citations omitted.) We disagree.

¶ 26. Cross-examination at the time of the October 30, 2006 hearing would have permitted the defense to challenge what was, in effect, trial court conduct equivalent to that of an investigating magistrate.[6]

---

[6] The institution of the investigating magistrate has been described as follows:

Under the system in question, before a criminal charge may be brought before the regular courts it must be investigated by a special official and, in effect, certified as deserving trial in court. The investigating magistrate is thus a kind of quasi-judge standing halfway between the prosecutor and the regular court. The danger of the institution lies precisely in this twilight zone of function which it occupies. The certification of a case for trial inevitably tends to confirm the criminal charge against the suspect, thus creating what may amount in practice to a strong presumption of guilt. The element of prejudgment involved constitutes a threat to the integrity of the trial in open court; the accused has, in effect, had a kind of half-trial in advance of the real trial, and this half-trial is conducted, not *before* but *by* a kind of half-judge who acts essentially as an inquisitorial court.

Carter argues that he would have asked "[Felicia] questions regarding, among other things, the voluntariness and motives of her testimony given that she was in custody and the inconsistencies in her testimony and her statements to the police about whether she actually saw Mr. Carter display a gun."[7] Asking these questions during the hearing might have helped Carter to avoid the implication during trial that Felicia's sworn testimony during the October 30, 2006 hearing was more accurate than her trial testimony.

¶ 27. In addition, the State argues that the error was harmless because the prosecutor did not use Felicia's testimony from the *ex parte* hearing during her direct examination of Felicia and instead, invoked it only after Felicia, on cross-examination, denied seeing Carter with a gun—thus, using it to impeach her. The State cites *Walder v. United States*, 347 U.S. 62 (1954), for the proposition that impeachment use of a witness's prior statements does not create any harmful error any more than does the use of illegally seized evidence to impeach a defendant's testimony. *See id.* at 65 (allowing Government to make affirmative use of evidence unlawfully obtained to impeach the defendant during cross-examination); *see also Harris v. New York*, 401 U.S. 222, 224–25 (1971) (allowing defendant's inadmissible statement to be used during cross-examination to attack the credibility of defendant's trial testimony). The State, however, does not develop why the holdings of *Walder* and its progeny should be extended to apply to the facts of this case. Accordingly, we decline to

BLACK'S LAW DICTIONARY 970 (8th ed. 2004) (quoting Lon L. Fuller, *Anatomy of the Law* 38–39 (1968)).

[7] Felicia had been in custody for two days awaiting the October 30, 2006 hearing.

address this argument further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court will not consider inadequately developed arguments).

¶ 28. As for the remaining *Jorgensen* factors, *see id.*, 310 Wis. 2d 138, ¶ 23, the State contends that "the substantial direct (and essentially unrebutted) evidence presented at trial that two people (other than Felicia Jones) saw Carter possessing a gun shows that Carter's absence from the [October 30, 2006] proceeding did not have any effect on the jury's verdicts." The State apparently relies upon Officer Geniesse's trial testimony relating to the statement he took from Haneefah on the day of the incident and upon Green's trial testimony. We are not convinced that the State's case was as strong as it makes it out to be.

¶ 29. Green was the only witness to testify *at trial* to seeing Carter with a gun. Green, however, had a motive to lie, given that the police found him with the gun. In addition, we agree with Carter that it seems the jury questioned Green's credibility based on the fact that during deliberations the jury inquired whether Green had been arrested as a felon in possession of a firearm. Moreover, we note that the jury found Carter guilty of disorderly conduct, but did not find that he committed the crime while threatening to use a dangerous weapon. Carter stipulated to being a felon; thus, the issue of whether he possessed the firearm that was found in Green's pocket was critical. Green's testimony may have been treated differently by the jury had the testimony from the October 30, 2006 hearing that Felicia saw Carter with a gun not been used to impeach her trial testimony.

¶ 30. By applying the harmless error factors, we conclude the error here—the trial court's decision to take sworn testimony from Felicia during an *ex parte*

hearing and to allow that testimony to be used to impeach her during trial—was not harmless. Under the facts presented, we simply cannot say that it is clear beyond a reasonable doubt that a rational jury would have found Carter guilty had the October 30, 2006 testimony, taken during an *ex parte* hearing, not been admitted during his trial.

*B. Carter's trial counsel was not ineffective.*

¶ 31. Carter argues that his trial counsel was ineffective when she failed to object to Felicia and Officer Geniesse's testimony that Carter was known to carry firearms. According to Carter, had a timely objection been made, the testimony regarding his prior conduct of being known to carry firearms would have been excluded as improper other acts evidence. *See* Wis. Stat. § 904.04(2).[8]

¶ 32. To establish ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both components of the analysis if the defendant makes an inadequate showing on one. *Id.* at 697. We affirm the trial court's findings of fact unless they are clearly erroneous, but the determi-

---

[8] Wisconsin Stat. § 904.04(2) provides:

> (2) OTHER CRIMES, WRONGS, OR ACTS. (a) Except as provided in par. (b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

nation of deficient performance and prejudice are questions of law that we review without deference to the trial court. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985).

¶ 33. Carter challenges the admissibility of testimony offered during his jury trial that he was known to carry firearms. Generally, evidence of other crimes, wrongs, or acts is inadmissible at trial to prove a person's character and that the person acted in conformity therewith. *State v. Hunt*, 2003 WI 81, ¶ 29, 263 Wis. 2d 1, 666 N.W.2d 771; *see also* Wis. Stat. § 904.04(2). However, under appropriate circumstances, § 904.04(2) allows other acts evidence to be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Hunt*, 263 Wis. 2d 1, ¶ 29. The listing of acceptable purposes for introducing other acts evidence set forth in § 904.04(2) is not exclusive. *State v. Sullivan*, 216 Wis. 2d 768, 783, 576 N.W.2d 30 (1998). Section 904.04(2) "favors admissibility in the sense that it mandates the exclusion of other crimes[, wrongs, or acts] evidence in only one instance: when it is offered to prove the propensity of the defendant to commit similar crimes[, wrongs, or acts]." *State v. Speer*, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429 (1993).

¶ 34. Whether other acts evidence should be admitted requires the application of a three-part test: (1) whether the evidence is offered for a permissible purpose under Wis. Stat. § 904.04(2)(a); (2) whether the evidence is relevant under Wis. Stat. § 904.01; and (3) whether the probative value of the evidence is substantially outweighed by the danger of

unfair prejudice, confusion of the jury, or needless delay, *see* Wis. Stat. § 904.03. *Sullivan*, 216 Wis. 2d at 772–73. Where, as is the situation here, "a [trial] court fails to set forth its reasoning [for admitting other acts evidence], it has been held that an appellate court independently should review the record to determine whether it provides an appropriate basis for the [trial] court's decision." *Hunt*, 263 Wis. 2d 1, ¶ 34.

¶ 35. According to the State, the testimony Carter challenges was admissible because it was offered for a permissible purpose. Specifically, the State contends that Felicia's "reference to 'stories' about Carter carrying a gun helped establish [her] state of mind at the time of Carter's actions and explained why [she] believed the 'click' she heard indicated that Carter had pulled a gun from his duffel bag." The State claims that this same purpose—to establish Felicia's state of mind—applies with respect to Officer Geniesse's testimony relaying Felicia's statement to him on the day of the incident that "she believed [the object was] a firearm because she's known [Carter] to carry firearms in the past." We agree with the State that this constitutes a permissible purpose for the offering of the other acts evidence. *See id.*, 263 Wis. 2d 1, ¶ 59 (concluding that one basis on which the other acts evidence was properly admitted was to show the victims' states of mind); *State v. C.V.C.*, 153 Wis. 2d 145, 162, 450 N.W.2d 463 (Ct. App. 1989) (concluding that the admission of evidence of the defendant's previous threatening acts to show the victim's state of mind was proper).

¶ 36. Under the second step in our analysis, we conclude that the basis for Felicia's belief that what she heard was a gun was relevant insofar as it provided the

jury with an explanation as to why she believed the "click" she heard was that of a gun. *See* WIS. STAT. § 904.01 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Carter disagrees, arguing that in contrast to the cases cited by the State, *see C.V.C.*, 153 Wis. 2d at 162; *State v. Burkhart*, 675 P.2d 811, 812 (Haw. Ct. App. 1984), where "the victims' states of mind were relevant to the issue of consent to sexual activity," Felicia's state of mind was not relevant to the jury's determination of the charges against him.

¶ 37. We are not persuaded by Carter's argument that evidence of state of mind is only relevant in those situations pertaining to consent to sexual activity. In *Hunt*, the defendant was convicted for, among other things, sexual assault charges. *Id.*, 263 Wis. 2d 1, ¶ 1. However, the basis for our supreme court's holding that the other acts evidence at issue was admissible to show the victims' states of mind did not hinge on the issue of consent; rather, the court held that it was properly offered to show "[the victims'] state[s] of mind, in light of their recantations of prior charges against [the defendant]." *See id.*, ¶¶ 4, 59, 67. Here, testimony related to Felicia's state of mind was relevant to her perception that Carter had a gun during the incident.

¶ 38. Finally, we conclude that the probative value of the admitted evidence was not substantially outweighed by its prejudicial nature. According to Carter, the fact that the jury deliberated for three hours reflects that this was a close case, such that the testimony he challenges caused him prejudice. This, however, is not enough for Carter to prove his case. "Nearly

all evidence operates to the prejudice of the party against whom it is offered. The test is whether the resulting prejudice of relevant evidence is *fair* or *unfair.*" *State v. Johnson*, 184 Wis. 2d 324, 340, 516 N.W.2d 463 (Ct. App. 1994) (citation omitted). Unfair prejudice occurs when the evidence tends to influence the outcome of the case by " 'improper means.' " *Id.* (citation omitted). Carter has not demonstrated how this evidence improperly influenced the outcome of the case. We are not convinced that the challenged testimony had the effect on the jury that Carter asserts, particularly where two witnesses, Haneefah (through Officer Geniesse's testimony relaying the statement she gave him on the day of the incident) and Green, placed the gun in Carter's possession. We also find it interesting, as noted by the State, that although the jury had three questions during its deliberations, none of the questions related to the testimony that Carter was known to carry firearms.

¶ 39. Therefore, after our independent review of the record, we hold that the trial court did not erroneously exercise its discretion in admitting the other acts evidence. Consequently, because any objections by trial counsel would have been futile, Carter's claim of ineffective assistance fails.[9] However, because Carter was denied his right to counsel and his right to be present at the October 30, 2006 hearing, he is entitled to a new

[9] On retrial, a cautionary instruction may be warranted if the State again introduces this testimony. *See State v. Parr*, 182 Wis. 2d 349, 361, 513 N.W.2d 647 (Ct. App. 1994) ("The delivery of a limiting or curative instruction serves to eliminate or minimize the risk of undue prejudice" resulting from the admission of other acts evidence offered for a permissible purpose.).

trial during which there should be no reference to Felicia's testimony from that hearing.

*By the Court.*—Judgment reversed and cause remanded for a new trial.