COURT OF APPEALS
DECISION
DATED AND FILED

August 25, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP2230**
**2019AP2231**
**2019AP2232**
**2019AP2233**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2018TP208
2018TP209
2018TP210
2018TP211

**IN COURT OF APPEALS**
**DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.I.S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

D.S.,

RESPONDENT-APPELLANT.

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.T., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

D.S.,

RESPONDENT-APPELLANT.

IN RE THE TERMINATION OF PARENTAL RIGHTS TO E.S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

v.

D. S.,

RESPONDENT-APPELLANT.

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

v.

D. S.,

RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: CHRISTOPHER R. FOLEY, Judge. *Affirmed*.

¶1 BRASH, P.J.[1] D.S. appeals the orders of the trial court terminating her parental rights for J.I.S., A.T., E.S. and D.G. She argues that she was denied the effective assistance of counsel at a motion hearing held in June 2019, during which she was without representation. She contends that this was a structural error, which is not subject to a harmless error analysis. D.S. further asserts that her trial counsel was ineffective in his failure to request an adjournment of the dispositional hearing when he had received a substantial amount of discovery the day before the hearing. We disagree and affirm.

## BACKGROUND

¶2 D.S. is the biological mother of J.I.S., born November 3, 2010; A.T., born February 11, 2013; E.S., born January 13, 2014; and D.G., born April 28, 2015. D.S. also has two other younger children who were not involved in these proceedings.

¶3 J.I.S. and A.T. were previously found to be children in need of protection or services in August 2013. In November 2013, A.T. was returned to the care of D.S., and J.I.S. was placed with his biological father, D.M.,[2] under the supervision of the Division of Milwaukee Child Protective Services (DMCPS). The dispositional order was allowed to expire in November 2014.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] D.M.'s parental rights for J.I.S. were also terminated in these proceedings, but he is not a party to this appeal. A.T.'s biological father is unknown; his rights were terminated as well.

¶4    In March 2015, J.I.S. and A.T. were again found to be children in need of protection or services, along with E.S.  D.G., who was born a month later with THC in her system, was found to be a child in need of protection or services in August 2015.  These findings were primarily based on the long history of domestic violence between D.S. and her boyfriend, M.G., the father of E.S. and D.G.[3]  Furthermore, the children had sustained injuries that they disclosed were the result of physical abuse by D.S. and M.G.

¶5    The children were placed in out-of-home placements, and requirements were set to ensure their safety before they could be returned to D.S.'s care.  For example, it was mandated that D.S. was not to allow violence in her home or in front of the children.  Additionally, DMCPS was to provide D.S. with services such as parenting programs, parent-child therapy, and individual therapy to assist her in meeting the requirements of having age-appropriate expectations for the children, providing safe care for them, and controlling her emotions.  D.S. was also required to have regular communication with the family's case manager, and to have regular visits with the children.

¶6    D.S. failed to meet these requirements.  There was another domestic violence incident between D.S. and M.G. reported in May 2018.  Furthermore, although D.S. denied that she was still in a relationship with M.G., D.S.'s two youngest children—one born in April 2018, and the other born subsequent to the May 2018 domestic violence incident—were conceived with M.G.

---

[3] M.G. is the biological father of D.G. and was adjudicated to be the father of E.S.  M.G.'s parental rights for E.S. and D.G. were terminated in these proceedings, but he is not a party to this appeal.

¶7    Moreover, D.S. refused to participate in parenting programs, discontinued family therapy shortly after starting it, and was discharged from individual therapy due to her inconsistent participation. Additionally, she was inconsistent with her communication with her case manager, refused to give the manager access to her home, and was characterized as being "very defensive" and "caus[ing] unnecessary conflicts with DMCPS."

¶8    D.S. was also inconsistent with her visits with the children. Her visits at one point had progressed to being partially supervised, but were returned to being fully supervised by DMCPS due to safety concerns: she failed to use car seats when driving the children in her car; she left them unattended in the car; there was smoking in the home which aggravates their asthma; and she allowed them to watch inappropriate television shows depicting violence and foul language. In fact, "[t]he children articulated that they did not feel safe" with D.S. After the decision to return to supervised visits, D.S. put visitation on hold because she disagreed with that decision.

¶9    DMCPS determined that "[o]verall, [D.S.] continues a pattern of immature and impulsive decision-making in regards to her children's safety and her own well-being." As a result, a petition for the Termination of Parental Rights (TPR) of D.S. with regard to J.I.S., A.T., E.S., and D.G. was filed on August 28, 2018. In the petition, the State's alleged ground for termination was the continuing need of protection or services, pursuant to WIS. STAT. § 48.415(2).

¶10      The matter proceeded to a court trial[4] at D.S.'s request.  It began on February 27, 2019, and continued over several days, concluding on April 15, 2019.  In a written decision filed April 22, 2019, the trial court held that the State had proven that there was a continuing need of protection or services for the children.  The court observed that "[t]he all encompassing and quintessential condition [D.S.] has not met is a demonstrated ability and willingness to provide safe and appropriate care for these children."  Thus, the case proceeded to a dispositional hearing.

¶11      That hearing was scheduled for June 11, 2019.  At the start of that hearing, the trial court stated that trial counsel for D.S. had "r[u]n into a licensing CLE credit quagmire" and, as a result, was unable to represent D.S. at that time. Therefore, the dispositional hearing was rescheduled to July 19, 2019.

¶12      However, there was another issue relating to treatment for A.T. that the trial court deemed to be an "emergent situation" which needed to be addressed that day.   A.T. has significant behavioral problems, including running away, punching his fist through glass, and attempting to "jump out of two-story windows[.]"  Just prior to the June 11 hearing, he had an incident for which he was hospitalized for inpatient treatment.  The doctor treating A.T. recommended that he be put on medication, but D.S. refused to provide consent for that treatment. Thus, A.T. was discharged because without medication, the doctor felt there was nothing more that could be done for A.T. in the hospital setting.

---

[4] The court trial and dispositional hearing were presided over by the Honorable Christopher R. Foley, and we refer to him as the trial court.

¶13 The trial court determined that this issue required immediate attention, although it noted the "conundrum" presented by the situation:

> I don't know what a judge does with this. This is a represented party, but [D.S.'s] lawyer can't be present and can't represent her; and, yet, she desperately wants to tell her side of this dispute about treatment for this child. I don't know what a judge is supposed to do with that.
>
> I will note in past discussions about this, even when her lawyer was present, she was quite vociferous about her own position in regard to these issues. So I certainly am going to let her have at it.

¶14 The court further observed that D.S.'s withholding of consent for treatment seemed to be related to her perception that she was being "disrespected" by the child welfare system. As a result, it believed that D.S. had "lost the ability to rationally evaluate what her child needs because she's so angry at [DMCPS] and the old guy in the black dress."

¶15 The State had moved for temporary guardianship of A.T., which the trial court denied. However, the court ordered that A.T. be evaluated for treatment and medication, pursuant to WIS. STAT. § 48.373, to ensure that A.T. immediately received proper medical attention.

¶16 The rescheduled dispositional hearing was held on July 19, 2019, with D.S.'s trial counsel again able to represent her. The trial court noted that in the time between the court trial and the dispositional hearing, D.S. had lost her job, was on the verge of losing her home—even though DMCPS had twice paid for D.S.'s first month's rent and security deposits to assist her in meeting the requirement of providing a safe home for the children, and had been "involved in a highly escalated confrontation with [J.I.S.] at a visit, causing [A.T.] to flee the

room." The court observed that "[q]uintessentially, this represents all the instability, chaos, violence and emotional warfare so harmful to these children" which necessitated intervention by DMCPS. The court found this to be a "persistently recurring pattern of behavior rendering [D.S.] incapable of safe, daily care of her emotionally fragile and behaviorally challenging children." Thus, the court determined that it was in the best interests of the children to terminate D.S.'s parental rights.

¶17    D.S. filed a motion for a postdisposition evidentiary hearing in March 2020.[5] She claimed that her trial counsel had provided ineffective assistance of counsel based on the suspension of his license which resulted in D.S. being unrepresented during the June 11, 2019 hearing regarding emergency medical treatment for A.T. D.S. further alleged that trial counsel did not obtain 400 pages of relevant discovery until the day before the dispositional hearing, and that counsel should have moved to adjourn the hearing so that he could be more fully prepared.

¶18    An evidentiary hearing was held in May 2020. D.S.'s trial counsel testified that his license had been suspended due to a problem with his bar dues payment not being properly processed. It was suspended on June 5, 2019, and reinstated on June 13, 2019; he was therefore unable to represent D.S. at the June 11, 2019 hearing. Counsel also testified that he had reviewed all of the discovery material with the assistance of his paralegal prior to the dispositional

---

[5] A notice to pursue postdisposition relief was timely filed by D.S. in accordance with WIS. STAT. RULE 809.107(2)(bm), and this court remanded this matter to the circuit court for further proceedings. D.S.'s postdisposition motion was heard by the Honorable Mark A. Sanders, who we refer to as the postdisposition court.

hearing. Furthermore, he stated that if that material had contained something critical to the dispositional hearing, he would have brought a motion to adjourn the hearing.

¶19    The postdisposition court, which found trial counsel's testimony to be credible, determined that counsel was not deficient with regard to his review of the discovery material just prior to the dispositional hearing. The court noted that the material was reviewed by counsel and his experienced paralegal who was familiar with the case, and that this was "not an unusual practice." In fact, the court found that "[i]t is not inappropriate or in any way deficient for a lawyer to rely on the work of a paralegal under his supervision to review discovery material."

¶20    With regard to the June 11, 2019 hearing, the postdisposition court noted that "getting one[']s license suspended in the middle of a case is probably deficient performance." It further opined that it would have been "prefer[]able" for D.S. to have counsel present at the June 11, 2019 hearing when the issue regarding treatment for A.T. was heard and an order for evaluation entered—even though the trial court had deemed it to be an emergency—because the order "implicate[d] [D.S.]'s rights."

¶21    However, the postdisposition court determined that D.S. had not demonstrated that she was prejudiced. The court noted that the motion for temporary guardianship advanced by the State at that hearing was denied. Furthermore, the court observed that even if D.S.'s lack of representation was prejudicial, it would have been only with regard to the case relating to A.T., and that issue was rendered moot with the trial court's termination of D.S.'s parental

9

rights for all of the children, including A.T.  In any event, the postdisposition court found that any prejudicial effect was not sufficient to undermine its confidence in the outcome of the case.  Therefore, it denied D.S.'s postdisposition motion.  This appeal follows.

## DISCUSSION

¶22    We review D.S.'s claim of ineffective assistance of counsel under the familiar standard.  To prove ineffective assistance, the defendant must show that his or her trial counsel's performance was deficient and that the deficiency prejudiced the defense.  *See* **Strickland v. Washington**, 466 U.S. 668, 687 (1984).  "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness."  **State v. Love**, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62.  "To prove constitutional prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  **Id.**  (citations and internal quotation marks omitted).  If a defendant fails to satisfy one component of the analysis, a court need not address the other.  **Strickland**, 466 U.S at 697.

¶23    Whether counsel's performance was deficient and whether the deficiency was prejudicial are questions of law that we review *de novo*.  **State v. Johnson**, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).  However, findings of fact made by the trial court will not be overturned unless they are clearly erroneous.  **Id.** at 127.

10

¶24    First, with regard to trial counsel's review of the discovery material the day before the dispositional hearing, we agree with the postdisposition court's assessment that this was not deficient performance.  Counsel had the assistance of his paralegal, who was experienced and very familiar with D.S.'s case.  In fact, as the postdisposition court noted, this type of review of discovery material takes place regularly in all types of litigation practices, due to the volume of information involved.  Furthermore, counsel testified that he was able to determine that this material would not affect his strategy during the dispositional hearing.  Therefore, counsel's conduct did not "fall[] below an objective standard of reasonableness." *See **Love***, 284 Wis. 2d 111, ¶30.

¶25    We next turn to D.S.'s lack of representation at the June 11, 2019 hearing.  "The statutory right to the assistance of counsel in a termination of parental rights proceeding is … essential to a fair proceeding." **State v. Shirley E.**, 2006 WI 129, ¶60, 298 Wis. 2d 1, 724 N.W.2d 623.  This right is violated if a parent in a TPR proceeding is "totally deprived of the presence and assistance of an attorney during a critical stage in the proceeding[.]" **Id.**, ¶61.  In that case, the violation is a structural error, and a new trial is required.  **Id.**, ¶63.  This is a question of law that we review *de novo*.  **State v. Carter**, 2010 WI App 37, ¶17, 324 Wis. 2d 208, 781 N.W.2d 527.

¶26    "A critical stage is any point in the criminal proceedings when a person may need counsel's assistance to assure a meaningful defense." **Id.**, ¶18 (citation omitted).  For example, this court in **Carter** determined that the defendant's right to counsel was violated when the trial court took sworn testimony from a witness—and later allowed that testimony to impeach that witness's trial testimony—without the defendant or his attorney present.

11

*Id.*, ¶¶20, 39. We determined that it was not "clear beyond a reasonable doubt that a rational jury would have found [the defendant] guilty had the … testimony, taken during an *ex parte* hearing, not been admitted during his trial." *Id.*, ¶30.

¶27 In this case, we conclude that the June 11, 2019 hearing was not a critical stage in these proceedings. The order issued by the trial court that day was for A.T. to be medically evaluated, which the court had already determined was an emergency situation; thus, the need for D.S. to present a meaningful defense was not paramount. Furthermore, this order—and the circumstances surrounding it— were not discussed by the trial court in its written decision terminating D.S.'s parental rights after the dispositional hearing. In other words, it does not appear to have played a role in the ultimate outcome of these proceedings. Therefore, as this hearing was not a critical stage in the proceedings, it was not a structural error for trial counsel not to be present at that time.

¶28 Rather, any error that may have occurred under those circumstances is subject to a harmless error analysis. *See* **State v. Hansbrough**, 2011 WI App 79, ¶10, 334 Wis. 2d 237, 799 N.W.2d 887 ("Constitutional errors at trial fall into two categories: trial errors, which are subject to harmless error analysis, and structural errors, which defy analysis by harmless error standards." (citation and internal quotation marks omitted)). An error is harmless if there is "no reasonable possibility" that it contributed to the outcome. **State v. Tulley**, 2001 WI App 236, ¶7, 248 Wis. 2d 505, 635 N.W.2d 807. A reasonable possibility is "one sufficient to undermine confidence in the outcome of the proceeding." *Id.*

¶29 As we discussed above, the order issued at the hearing on June 11, 2018—emergency medical treatment for A.T—did not affect the outcome of the

proceedings. We therefore conclude that any error created by trial counsel's inability to represent D.S. at that hearing was harmless. *See id.*

¶30 For the same reason, D.S.'s claim also fails under the ineffective assistance of counsel rubric. Even if we assume, without deciding, that the postdisposition court was correct in its finding that trial counsel's payment problems with his bar dues, which resulted in his license suspension, constituted deficient performance, we agree that D.S. has not established that she was prejudiced by this presumed error. Again, the trial court's order that day had no bearing on the final decision in these proceedings. Therefore, D.S. has not shown that there is a reasonable probability, sufficient to undermine confidence in the ultimate outcome, that counsel's presumed error affected the result of the proceedings. *See Love*, 284 Wis. 2d 111, ¶30.

¶31 Accordingly, we affirm the orders terminating D.S.'s parental rights.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

13