COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.   2023AP934-CR
2023AP935-CR
2023AP936-CR
STATE OF WISCONSIN**

Cir. Ct. Nos.  2015CM402
2017CM392
2017CF2803

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

   V.

ALVIN MAURICE COOLEY,

   DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County:  DENNIS FLYNN and REBECCA A. KIEFER, Judges. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Alvin Maurice Cooley appeals the judgments convicting him of numerous crimes, many of which were acts of domestic abuse. Cooley also appeals the order denying his postconviction motion.[1] He argues that the circuit court erred when it excluded him from his jury trial and that his trial counsel was ineffective for failing to object to Cooley's exclusion. The circuit court denied Cooley's postconviction motion, and we affirm.

## BACKGROUND

¶2 The charges in this case began with a reported incident in which Mary[2] described a domestic dispute with Cooley, the father of her children. Mary told police that Cooley punched her in the face multiple times, threatened to kill her, and intentionally damaged her television by kicking it. The State subsequently filed a criminal complaint in Milwaukee County Circuit Court Case No. 2015CM402 charging Cooley with the following misdemeanors: battery; criminal damage to property; and disorderly conduct, all as acts of domestic abuse.

¶3 When Cooley failed to appear for court in Case No. 2015CM402, the State filed a criminal complaint in Milwaukee County Circuit Court Case No. 2017CM392, charging him with bail jumping.

---

[1] We granted Cooley's motion to consolidate these appeals for briefing and disposition. The Honorable Dennis Flynn presided over Cooley's trial and sentencing. The Honorable Rebecca A. Kiefer presided over the postconviction proceedings.

[2] In accordance with the privacy protections provided in WIS. STAT. RULE 809.86 (2021-22), we adopt the pseudonym for the victim used by the State.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4    In its third criminal complaint against Cooley, the State charged him in Milwaukee County Circuit Court Case No. 2017CF2803 with nine crimes for twice fleeing police on May 20 and May 22, 2017, for beating and threatening Mary before the May 22, 2017 fleeing incident, and for endangering their one-year-old and four-year-old children, who were in the car when Cooley sped off to evade the police. The charges were as follows: two felony counts of fleeing or eluding an officer; two misdemeanor counts of bail jumping; three felony counts of second-degree recklessly endangering safety; misdemeanor battery; and misdemeanor disorderly conduct. Four of the crimes were charged as acts of domestic abuse.

¶5    The three cases were joined for a jury trial. The first day of trial began with jury selection, opening statements, and the State calling its first witnesses. The State began by calling a 911 dispatcher and Mary as witnesses. During Mary's testimony, Cooley interrupted, stating: "I'm not going to stand around and watch her kill me for my kids' sake. This is a bunch of bologna."

¶6    Outside the presence of the jury, the circuit court directed Cooley to remain silent and to not disrupt Mary's testimony. The court further admonished Cooley not to disrupt the trial and explained that if Cooley had another outburst, the court would have him removed "until we can have assurances that you would not have further outbursts." Cooley responded that he would not promise anything but acknowledged that he understood the court would remove him upon another outburst.

¶7    The State resumed its questioning of Mary without incident. Cooley's trial counsel then began cross-examining Mary, but was not yet finished when the trial ended for the day.

3

¶8    The following morning, before the trial recommenced, the circuit court was notified of an issue with Cooley's trial clothes, which were not provided to him.  Eventually it was decided that Cooley would wear his clothes from the previous day, but needed to be taken away from the courtroom to change.

¶9    While Cooley was getting dressed, and outside Cooley's presence, one of the deputies assigned to the courtroom informed the circuit court that the deputy had threatened to shock Cooley with 50,000 volts of electricity if he had an outburst.  According to the deputy, Cooley's response to the threat was, "That's ok.  I'll do that in front of the jury[.]"  The deputy asked the court to remove Cooley from the courtroom.

¶10    The circuit court also heard from another deputy, whom the court had sent to inform the jury that they were delayed.  The deputy informed the court that, upon notifying the jury that the court was "'tending to some housekeeping issues' … [s]everal jurors at the same time … said in unison, 'Oh, is he causing a problem again down there?'"  The deputy relayed that she told the jury she did not know and then returned to the courtroom.  One of the deputies informed the court: "I think his behavior is escalating.  He's getting more aggressive."

¶11    The circuit court then asked that Cooley be brought into the courtroom.  At that point, the deputies wheeled Cooley into the courtroom in a "high-risk status in a wheelchair."  The chair secured Cooley, who had a device affixed to his leg, and enabled the deputies to subject him to a 50,000-volt shock.  With Cooley present and so restrained, a discussion ensued between the circuit court, counsel, and the deputies about possible ways of allowing Cooley to remain in the courtroom.  After a deputy interjected and reiterated that he would like to see Cooley removed from the courtroom, the court stated it was the "assessment of

4

the professionals … that this defendant be physically removed from this matter and placed in a different area and that the trial … continue." The court additionally stated the deputy's belief that Cooley would "act out in front of the jury, causing the deputy then to activate the stun belt."

¶12 The circuit court, without addressing Cooley, asked trial counsel for his position, to which counsel responded: "My focus is on having Mr. Cooley present with me to help me defend him." Trial counsel characterized the statements attributed to Cooley by the deputy as "bravado" and stated his belief that Cooley had no "intention [of] hurting himself by doing something foolish." Trial counsel then asked to have Cooley remain in the courtroom, in a regular chair, rather than the high-risk wheelchair. When asked by the court, the prosecutor stated she had nothing to add.

¶13 The circuit court accepted the deputy's statement relaying that Cooley had indicated he would act out in the presence of the jury. The court then ordered Cooley be removed from the courtroom and excluded from the jury trial. At trial counsel's request, the jury was instructed: "Mr. Cooley[] has chosen not to be present for the remainder of the morning's session of this trial."

¶14 The trial proceeded. Trial counsel resumed his cross-examination of Mary. When her testimony was complete, the State additionally called one other lay witness and four law enforcement witnesses.

¶15 Cooley was brought back into court for the afternoon session. At this point, however, the State had concluded its presentation of its evidence and rested. Following a colloquy with the court, Cooley chose not to testify. The jury went on to find Cooley guilty of all of the charges.

5

¶16    Cooley sought postconviction relief, arguing trial counsel was ineffective for failing to object to his removal.  Cooley additionally argued that the circuit court failed to conduct a proper colloquy with Cooley before removing him.

¶17    The circuit court held a ***Machner***[3] hearing and requested supplemental briefing before denying Cooley's postconviction motion.  Although the court concluded that Cooley's right to be present for trial was violated, it nevertheless deemed the error harmless.  The court additionally held that Cooley did not receive ineffective assistance of counsel because, while trial counsel's performance was deficient, Cooley was not prejudiced.  This appeal follows.

## DISCUSSION

¶18    Cooley renews his argument that the circuit court improperly excluded him from trial.  Assuming without deciding that Cooley's right to be present was violated, we conclude the error was harmless.

¶19    Included in a defendant's constitutional rights is the "right to be present at any stage of the criminal proceeding that is critical to its outcome if [the accused's] presence would contribute to the fairness of the procedure."  ***State v. Carter***, 2010 WI App 37, ¶19, 324 Wis. 2d 208, 781 N.W.2d 527 (alteration in original; citation omitted).  Additionally, in Wisconsin, defendants have a statutory right to be present during all stages of a trial.  *See* WIS. STAT. § 971.04(1).

---

[3] ***State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

6

¶20    Because Cooley was not present during a portion of his trial, the question becomes whether his nonappearance was nonetheless harmless. *See Carter*, 324 Wis. 2d 208, ¶22 ("When a violation of a defendant's constitutional or statutory right to be present at any portion of his trial proceedings is alleged, the State, as beneficiary of any error, has the burden of proving that the error was harmless." (Citing **State v. Anderson**, 2006 WI 77, ¶45, 291 Wis. 2d 673, 717 N.W.2d 74, *overruled on other grounds by* **State v. Alexander**, 2013 WI 70, ¶28, 349 Wis. 2d 327, 833 N.W.2d 126)). When evaluating whether an error was harmless, a court inquires "whether it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[.]'" **State v. Shomberg**, 2006 WI 9, ¶18, 288 Wis. 2d 1, 709 N.W.2d 370 (citations omitted). "In other words, if it is 'clear beyond a reasonable doubt that a rational jury would have [rendered the same verdict] absent the error,' then the error did not 'contribute to the verdict,' and is therefore harmless." **Id.** (alteration in original; citations omitted).

¶21    For this analysis, "[t]he 'overall strength of the State's case' is often an important consideration. Other considerations include 'the frequency of the error' and the 'nature of the defense[.]'" **State v. Barnes**, 2023 WI 45, ¶29, 407 Wis. 2d 652, 990 N.W.2d 759 (alteration in original; citations omitted). Whether an error was harmless is a question of law that we review independently. *See id.*, ¶28.

¶22    The State's burden to show harmlessness is met here. The State explains that the evidence against Cooley was overwhelming and included Mary's description of the events that transpired, which was confirmed by law enforcement officials and a lay witness. The State's case was further proved by documentary

and photographic evidence memorializing Mary's injuries, the property damage, and the vehicles involved in the police chases.

¶23    When we consider the nature of the defense, per Cooley, his strategy hinged on challenging the credibility of the State's witnesses, particularly Mary, and arguing that the witnesses were either mistaken or motivated by bias in their testimony. Cooley was present for the entirety of Mary's direct examination and a portion of her cross-examination. Consequently, he had the opportunity to point out to trial counsel any misleading testimony or anything he thought counsel should ask Mary about her direct testimony. As aptly summed up by the State, the jury believed Mary, and the jurors would have believed her even if Cooley had been present for the second morning of trial.

¶24    The State explains, and the record confirms, that the remaining witnesses testified only briefly and simply relayed their observations of the events that transpired, the aftermath of the events, or in the case of the lay witness, the events that prompted him to call the police. None of the witnesses knew Cooley and no one testified to seeing him at the crime scenes. We note in passing that Cooley has not identified any crucial information he could have provided to trial counsel relative to Mary's testimony or that of the other corroborating witnesses if he had been present.

¶25    Cooley does, however, argue that his absence from trial and the negative inferences the jury was therefore permitted to make cannot be minimized. As support, he points to the deputy's remark that certain jurors asked if Cooley was acting up again while they were delayed in the jury room. The State argues that any supposed negative inferences are entirely speculative and unsupported by

the record. We agree. Moreover, if the jury did, in fact, have negative impressions of Cooley, responsibility for that rests entirely with him.

¶26 It is clear beyond a reasonable doubt that a rational jury would have arrived at the same verdicts even if Cooley had been present during the second morning of trial. As such, the circuit court's error in removing him was harmless.

¶27 In light of this conclusion, Cooley's ineffective assistance of counsel claim is meritless. To prove that counsel was ineffective, a defendant must make a two-prong showing that counsel's performance was deficient and that the deficiency prejudiced the defense. *See **Strickland v. Washington***, 466 U.S. 668, 687 (1984). We may consider either prong first, and if a defendant fails to make the necessary showing as to one prong, we need not consider the other. *See **id.*** at 697. Because we have concluded that any error in this regard was harmless, it follows that Cooley cannot establish prejudice. *See **id.*** at 694 (holding that to show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9